# W. J. LUKER v. STATE.

No. A-9089.  Oct. 23, 1936.
(62 Pac. [2d] 255.)

J. Q. A. Harrod and Laynie W. Harrod, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State,

DAVENPORT, J.  The plaintiff in error, hereinafter referred to as the defendant, was convicted of assault without justifiable or excusable cause with intent to injure, and sentenced to imprisonment in the state penitentiary for two years.  Motion for new trial was filed, overruled,

exceptions saved, and the defendant has appealed to this court.

The evidence in substance is as follows: B. F. Smith was owner and operator of a feed store in Olustee; the rear of the building was inclosed, and adjoining the main building and fronting on the street was a large gate entering into the inclosure; on the night in question this gate was closed. On June 9, 1935, H. A. Savage, the sheriff of Jackson county, received information the Smith store was going to be burglarized that night; about midnight the sheriff, in company with two deputies, Rollins and Burnett, drove to Olustee, and J. L. Richards, the night watchman, went with them to the Smith building; Savage and Burnett took their position in the rear of the building within the inclosure, and Rollins and Richards took their position in weeds in a vacant lot across the street from the building, about forty-seven steps in a northwestern direction from the front door of the Smith building; Richards turned out the street light adjacent to the building and went across the street north for the purpose of turning off another light when the shooting started, about thirty minutes after the officers had taken their positions. Rollins heard somebody walking up the road from the south, it was dark, and he could only see the dim outline of a person as they walked up the sidewalk. The parties walked up in front of the Smith building, on the sidewalk, and flashed a flashlight on the building; Richards and Rollins say they heard some kind of a noise like something had been hit or broken. Rollins raised up a little from his position, and immediately two shots were fired close together and the flash from the gun showed it was pointed toward Rollins, who at once fired three shots from his shotgun, the first shot being directed toward the man with the flashlight, and the

others toward the spot from where the two shots came. Rollins and Richards heard the parties running away from the building. On investigation the officers found shot had struck the window in front of the building where the man with the flashlight was standing; they also found some blood and the flashlight; footprints were found at the corner of the building where some one had been standing and from which the two shots were fired. Shots from the shotgun also lodged in the corner of the building.

B. F. Smith stated: "I heard the shots; there two light shots followed by three heavy ones." Dick Warren stated he heard two pistol shots, or revolver shots, followed by three shots. The sheriff and Deputy Burnett, who were in the rear of the building, heard the shots but did not see the parties. When the shooting was over, Sheriff Savage phoned to Altus, to the officers there, and advised them what had taken place at Olustee, and who he thought the parties were. The officers went to the home of the defendant Luker, and there found the defendant and Victor Loftin, and upon examination it was found both men were wounded, and had been shot in the back, as shown by the doctor's testimony. They were ordered taken to the hospital.

It is further shown by the testimony that, after the defendant in this case and Loftin were placed under arrest and taken to the hospital, the car of the defendant, which was parked some distance from his home on the street, was examined and it had a flat tire.

A pistol was found in the car, which the defendant admitted was the pistol he had at Olustee, and a number of tools, some soap, and a case knife. The defendant admits he had gone to the town of Olustee, in company with Victor Loftin, on the night of the shooting; that he had

been advised there was to be a poker game in the Smith building, or somewhere near there, and, as he had never been to Olustee before, he was using the flashlight to locate the Smith building, as the party advising him of the poker game told him to look for a certain advertisement of flour on the building, and they were using a flashlight to locate the Smith building in which the poker game was to be played. The defendant further states that he and Loftin parked their car two or three blocks from the building, as they had a flat, and had gone to one or more houses where they thought parties lived to secure information about the poker game and found no one at home, and they were walking down by the building and flashed their light on the building to see if they could see any one on the inside, and as they did that some one fired three shots and he drew his pistol and fired twice in the air, not trying to hit any one. The defendant states he did not fire his pistol until after he had been wounded by the shots admitted to have been fired by Deputy Rollins.

The defendant admits he had driven from Olustee to Altus on the flat, and had parked his car a short distance from his home a short time before the officers came up looking for him, and that the doctor ordered both Loftin and the defendant taken to the hospital, and goes into detail as to the injuries received from the shots from the shotgun. He admits the pistol found in the car was the one he had used in Olustee; he also accounts for the other tools and the soap and case knife found in the car by saying the children had the soap in the car when they had been to Chickasha and had probably left it there, and the case knife had been used while eating a lunch and had not been taken out of the car; that he had bought the tools a few days before when he was tightening up a car for another party.

Several parties testified to the defendant's good character while living in Greer county near the Jackson county line. There are a number of pages in the testimony of things that transpired which it is not deemed necessary to set out. The foregoing is the substance of all the testimony material to arrive at a proper opinion as to whether or not the defendant was accorded a fair and impartial trial, and as to whether or not there is sufficient evidence in the record to sustain a conviction.

Seven errors have been assigned by the defendant in which he alleges there are sufficient errors to warrant a reversal of this case. They will all be considered under the seventh assignment: "The trial court erred in overruling the motion for a new trial filed by the plaintiff in error, to which plaintiff in error excepted."

The motion for a new trial contains all the other assignments. There is no conflict in the testimony as to the officers being at the Smith building in Olustee the night the sheriff contends the burglary was attempted. The defendant admits he was at the Smith building with the flashlight, and that the flashlight was thrown in the building, the state contending it was for the purpose of entering the building, and defendant contending it was for the purpose of trying to locate parties in a poker game. As shown by the record, information had been received by the sheriff of Jackson county that the Smith store was going to be burglarized that night, and, acting upon that information, he had taken two of his deputies, and the town marshal of Olustee, and surrounded the building. After waiting about thirty minutes, the defendant and Victor Loftin came walking up the street, and walked up on the sidewalk in front of the Smith building, and flashed their light into the Smith building.

From this point the testimony is conflicting as to what took place at the building; the testimony of the state showing that Rollins raised up and two shots were fired, and the flash of the gun indicating it was pointed in his direction, and Rollins then fired three shots from his shotgun, and the parties ran off. The defendant contends three shots were fired before he fired his pistol twice in the air, after he had been shot, and did not try to hit any one. Later the defendant was found wounded, and the pistol he had used was found in his car, together with some tools, soap, and a case knife. The only conflict material to be settled is the question, Was the defendant at the building at the late hour of the night he says he was for the purpose of trying to locate a poker game, or had he and Victor Loftin gone there for the purpose of burglarizing the building, and did the officers fire three shots before he fired his pistol twice?

The defendant in his brief urges that his car was searched by the officers in Altus after he had returned from Olustee, without a search warrant, and that the search was unlawful and the testimony secured thereby was improperly admitted. The record shows that the admission of this testimony included some testimony as to the contents of the bottle found in the car, but afterwards withdrawn from the jury, and the jury advised not to consider the same; that by reason of the admission of the testimony of the articles found in the car he was improperly convicted, and his motion for a new trial should have been granted.

In Berg v. State, 29 Okla. Cr. 112, 233 Pac. 497, 498, in the eighth paragraph of the syllabus, this court said:

"In case of a lawful arrest, the arresting officer may take from the person arrested any instrument of crime

or anything else reasonably deemed necessary to his own or the public safety, and the use of such things on the trial of the person arrested is not objectionable as obtained by unlawful search and seizure."

In Foreman v. State, 38 Okla. Cr. 50, 259 Pac. 176, this court in the third paragraph of the syllabus said:

"Where a defendant is convicted and appeals to this court, the judgment should not be set aside or a new trial granted on account of the improper admission of evidence unless this court from an examination of the entire record is of the opinion that the error complained of has probably resulted in a miscarriage of justice, or that it constitutes a substantial violation of a constitutional or statutory right (section 2822, Comp. Stat. 1921)." Crossman v. State, 28 Okla. Cr. 198, 230 Pac. 291; Welch v. State, 30 Okla. Cr. 330, 236 Pac. 68; Davis v. State, 30 Okla. Cr. 61, 234 Pac. 787.

The withdrawal of the evidence by the court as to the analysis of the contents of the bottle left only before the jury the question of the bottle. This court has often held that, where a defendant is convicted and appeals to this court, the judgment should not be set aside or a new trial granted on account of improper admission of evidence, unless this court from an examination of the entire record is of the opinion that the error complained of has probably resulted in the miscarriage of justice, or that it constitutes a substantial violation of a constitutional or statutory right.

After a careful examination of the record, we conclude that the admission of the evidence as to the analysis of the contents of the bottle, which evidence was afterwards withdrawn from the jury, did not result in a miscarriage of justice, or that it constitutes a substantial violation of the constitutional rights of the defendant. The defendant, in arguing the admission of the testimony of the witnesses

stating in detail the articles found in the car of the defendant, after he was placed under arrest, insists that the evidence was improperly admitted because the officers were not armed with a search warrant to search the car of the defendant.

In Sallee v. State, 54 Okla. Cr. 217, 17 Pac. (2d) 520, in the first paragraph of the syllabus this court said:

"Where the officers have information that a felony has been committed, and where they have reasonable ground to believe that defendant has committed this felony, they may legally arrest him, and evidence obtained in a search of his premises after his arrest is admissible, notwithstanding defendant may have escaped from the officers shortly after his arrest."

From an examination of this record it shows that the defendant was arrested by the officers at his home, and, after he was arrested and on his way to the hospital, officers searched the car of the defendant. It was not necessary for the officers to have a search warrant to search the premises of the defendant, his person, or his car after he had been placed under arrest upon the belief and information the officers had received that the defendant had committed a felony.

The next question urged by the defendant is that there is not sufficient evidence to sustain a conviction. The defendant in his argument urges that the testimony conclusively shows that the officers fired the first shots and that he was justified in firing the shots he fired as he did not know who had shot and wounded him and Loftin. On this conflicting evidence, the court, under proper instructions, submitted the conflict in the evidence to the jury, and the jury by its verdict found against the contention of the defendant.

In Tillery v. State, 23 Okla. Cr. 226, 214 Pac. 198, this court said:

"The verdict will not be set aside * * * where * * * there is some substantial evidence tending to support the verdict."

The jury is the exclusive judge of the weight of the evidence, and if there is a clear conflict in the evidence, or it is such that different inferences can be drawn from it, this determination will not be interfered with unless it is clearly against the weight of the evidence or appears to have been influenced by passion or prejudice. In this case there is no indication that passion or prejudice entered into the consideration of the jury in arriving at its verdict. Choate v. State, 37 Okla. Cr. 314, 258 Pac. 360; Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Evans v. State, 55 Okla. Cr. 157, 26 Pac. (2d) 767.

In Adams v. State, 54 Okla. Cr. 363, 21 Pac. (2d) 1075, in the first paragrah of the syllabus this court said:

"Conflicting issues of fact are for the sole determination of the jury. A conviction will not be disturbed on appeal because of conflicts in the evidence, if the evidence adduced reasonably tends to support the verdict and judgment." Wagoner v. State, 60 Okla. Cr. 36, 61 Pac. (2d) 33.

The instructions of the court correctly advised the jury as to the law applicable to the facts, and the jury by its verdict found against the defendant, and this court is not inclined to disturb the verdict of the jury.

We hold there are no errors in the record warranting a reversal. The evidence is sufficient to sustain the verdict and judgment. The case is affirmed.

DOYLE, J., concurs. EDWARDS, P. J., absent, not participating.