## D. P. PENROD v. STATE.

No. A-5901.   Opinion Filed Aug. 25, 1927.
(258 Pac. 1052.)

Anglin & Stevenson and Forrest M. Darrough, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the county court of Hughes county on a charge of transporting intoxicating liquor and was sentenced to pay a fine of $50 and to serve 30 days in the county jail.

The record discloses that at the time charged in the information certain officers in the nighttime overtook a service car driven by defendant some 3½ miles out of Wetumka.   They observed a man in it who by his conduct attracted their attention and turned and followed the car.   They drove up close and sounded the horn, but the car did not move over, and about this

time some whisky was thrown out, a part of which splashed on the car driven by the officers. The officers then crowded the car to the side of the road and stopped it. Nothing was said until the car stopped. Defendant was driving and the man in the rear seat was one Ed Pugh, who had 5 gallons of whisky, a part of which he had broken. Pugh pleaded guilty and sought to take all the blame. Defendant denied ownership of the whisky and testified that he did not know Pugh was transporting whisky and that he had no knowledge or connection with it. Pugh testified, in part:

"* * * Q. What did you have in the car? A. I had whisky in the back seat.

"Q. How much? A. Five gallons.

"Q. Where did you get it? A. I don't know the place. I don't know; some place in the woods.

"Q. He stopped the car to let you get it? A. Yes, sir.

"Q. You carried the sack up to the car, had one batch in one sack? A. I don't know. I wouldn't be positive about that, but I think both in a sack.

"Q. Were you drunk when you put the whisky in the car? A. I was beastly drunk.

"Q. How long were you gone after the car had stopped before you got back to the car? A. I don't remember just how long.

"Q. Penrod stayed there at the car? A. I don't think he was with me. * * *"

Defendant testified:

"* * * Q. You know Ed Pugh? A. Yes, sir.

"Q. Did you make a drive for him that night? A. Yes, sir. * * *

"Q. What did he do? A. He just walked up and asked me if I would make a drive for him, and I said I would.

"Q. Where did you go?   A. North of Dustin. * * *

"Q. Where did you stop, at some house?   A. Yes, sir.

"Q. Did you get out? A. No, sir; I didn't.

"Q. Did he get out?   A. Yes, sir.

"Q. How long was he gone?   A. I don't recollect; no, sir.   I went to sleep and don't know just how long, something like an hour.

"Q. When you woke up, was he back?   A. Yes, sir.

"Q. How did you know he was back?   A. Something shook the car and then he said, I am ready to go." * * *

"Q. Tell what happened at that time, just previous to the time you stopped?   A. Well, when I saw the reflection of the lights of the car I just supposed it was someone wanting to pass me, and I was in what you call the middle of the road, and I pulled over and let the car pass then; just about that time something whipped against my car, and just as soon as I heard Roy speak, I knew him.

"Q. What did he do?   A. He stopped my car.

"Q. Did he run his car into your car?   A. Yes; his fender hit my car.

"Q. Did it lock the cars?   A. I could have drove on, if I had wanted to.

"Q. All right, now, did you have some whisky in the car?   A. They said they did; I never did see it.

"Q. Did Ed Pugh tell you where he was going before you left town?   A. No, sir.

"Q. Did he tell you what he had—did you know he had any whisky in the car?   A. No, sir. * * *"

On cross-examination, he said:

"Q. And you don't know whether you were asleep or not?   A. No, sir.

"Q. And you didn't know what he put in the car? A. No, sir.* * *"

The contention made is that the evidence connecting defendant with the transportation is circumstantial and not sufficient to exclude every other reasonable hypothesis than that of guilt. The evidence detailed, that is, the driving of the car at the time and under the circumstances shown, the quantity of whisky in the car, the reluctance of defendant to stop, and his statements to the officers after he had stopped, are inconsistent with any reasonable conclusion than that of his guilt.

The further contention is that the evidence was procured by an unreasonable search, in violation of defendant's constitutional rights. No search was in fact made. The testimony of defendant that he did not know of the whisky being in his car and had no connection with it precludes him from objecting to its admissibility in evidence. Upon this theory he is not in a position to complain of a search of his codefendant Pugh, even if one had been made, since it is well settled that the right to complain is a personal privilege available only to the person searched or the owner of the contraband discovered. Ragland v. Commonwealth, 204 Ky. 598, 265 S. W. 15, is a case where a defendant disclaimed ownership of a suitcase which was sitting at her feet when questioned about it by the sheriff. She was afterwards convicted. At the trial she objected to the admissibility of the evidence on the ground that she had been illegally searched. It was held that when she disclaimed ownership she was not in a position to urge this objection. This case depends on whether or not there is evidence ¡connecting defendant with the transportation of the whisky found in the possession of his codefendant Pugh. We find there is ample evidence to sustain the judgment.

We are not unmindful of the holding of this court

50

in the case of Childress v. State, 31 Okla. Cr. 208, 238 P. 218, and the case of Graham v. State, 31 Okla. Cr. 135, 237 P. 462. See, also, in this connection, the cases of McAdams v. State, 30 Okla. Cr. 207, 235 P. 241, Barnett v. State, 31 Okla. Cr. 413, 239 P. 680, and Wasson v. State, 33 Okla. Cr. 70, 242 P. 779. A different situation is presented where an officer by force or intimidation procured from the person or immediate presence and possession of an accused evidence which is later sought to be used against him, where such officer had no search warrant and has not made a legal arrest.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.