JIM SANDERS v. STATE.

No. A-5824. Opinion Filed May 11, 1929.

(277 Pac. 605.)

70

 

Phillips & Phillips, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was convicted of grand larceny, and his punishment fixed at one year in the penitentiary. Motion for new trial was filed, considered, and overruled. The defendant excepted, and the case appealed to this court.

The testimony introduced on behalf of the state in substance is that on the 1st day of November, 1924, there was taken from the possession of J. D. Nickles, Tom Boydston, and Ciscero Sewell three bales of cotton of the value of $300, the said cotton being in the ginyard of a gin near Matoy, Oklahoma; that on the following day Bill Brown sold three bales of cotton to a cotton merchant, O. C. Thornton, at Caney, Oklahoma; Brown was paid $300 for the cotton; that, some time after the sale of the cotton by Brown to Mr. Thornton, the defendant in this case, Jim

Sanders, came to Thornton and asked him if Bill Brown brought any cotton to town, and, if so, how much, and how much he paid for it. The testimony further shows that, after the cotton was missed at the gin one evening about dark, Bill Brown and a number of other parties were at the gin, and Jim Sanders rode up; that it was understood Bill Brown might be connected with the taking of the cotton and some one suggested to the defendant that he was suspicioned.

The testimony further shows Bill Brown ran off and after awhile the defendant got on his horse and went away in a gallop, and whooped a time or two as he rode away. The testimony of the state further shows that, on the evening of the night before the cotton was taken, defendant and Bill Brown were on the road a short distance from Matoy, where Bill Brown had built a fire, and they spent some time there together, a number of parties going to the camp and taking part in a card game with Brown and Sanders. As far as the record discloses, the last time defendant Sanders and Bill Brown were together was at the camp on the road near Matoy, the night the cotton was missed from the gin-yard. Nobody saw them together after that time, and Brown, it seems from the record, had entered a plea of guilty and received a suspended sentence. He was not called by the state to testify against the defendant.

The testimony of the state further shows that the defendant, Sanders, shortly after the cotton was taken, left his father's place, went to Texas, and finally came back to Oklahoma, where he was apprehended; that, when he was apprehended, he had a sum of money upon him which was more than half of the money the cotton sold for; but there is no testimony in the record on behalf of the state showing that the defendant in this case received any of the

money from the sale of the cotton, or that he had anything to do with the taking of the cotton. The testimony shows further that the defendant had picked cotton for Bill Brown a few days before the cotton was taken from the ginyard and that Brown still owed the defendant for cotton picking. In taking the testimony the state went into the question of Brown running off from the gin, and defendant objected for the reason that the witness testified he did not see defendant there at the time, which objection was overruled, and defendant duly excepted. The witness Thornton was asked if he bought any cotton from Brown on November 1, 1924, to which question the defendant objected, the court overruled the objection, and defendant duly excepted. The state then went into the question of Brown running off, to which the defendant objected, on the ground it was incompetent and immaterial as to what Brown was doing, in the absence of the defendant. The objection was overruled, and defendant duly excepted. The witness was then asked the following questions:

"Q. When did you next see either of them? A. I never seen Bill Brown until Sunday night some time in the night; he came to my house.

"Q. Did he say anything when he came? Did he stay all night there? Where did he go the next day? A. He went over on a branch that runs down near the field.

"Q. Did he request you to do anything for him?

"Mr. Phillips: I object.

"It will be overruled.

"Mr. Phillips: Exceptions.

"Q. what was it?

"Victor Phillips: I object to anything about Bill Brown, it would not be proof against Sanders.

"By the Court: I reckon that is going about the limit.

"Q. After talking to him did you go anywhere? A. Yes, sir.

"Q. Where did you go? A. I went to his place.

"Q. What did you do at his place?

"Mr. Phillips: Incompetent, irrelevant, and immaterial.

"Mr. Turnbull: I am not asking what he said.

"Mr. Phillips: He was asking what Bill Brown done.

"Mr. Phillips: I object to what he did."

After considerable argument back and forth, the defendant was then asked:

"Q. What did you do when you went over to Bill Brown's house?"

Which question was objected to, the objections overruled, and exceptions saved.

"Q. Go ahead and tell what you did when you went over there. A. We got the $175.00 in money that he had buried.

"Q. Where did you get it? A. He got it out of the ground.

"Q. What did you finally do with the money? A. Turned it over to the deputy sheriff."

The state did not call Bill Brown as a witness, nor did the defendant. The defendant in his own behalf testified and admitted that he was with Brown on the road where he was camping the evening before the cotton was alleged to have been missed that night; that they were there some time and a number of parties came along and stopped and played cards with them by the fire. The defendant testified that Bill Brown owed him for some money

borrowed, and for some work, and that Brown told him he was going to sell some cotton the next day and that he wanted to collect what Brown owed him. He explained why he was in the neighborhood at that time, and his father and mother also testified as to why the defendant had been in the neighborhood of Matoy. The defendant also explained what money he had, and stated what bank the money was in when he left, where he went in Texas, and from there back into Oklahoma, where he was apprehended. He denied any knowledge of the taking of the cotton by Bill Brown, and he denied he had anything to do with it whatever. He accounted for the money that he had by the fact that a certain sum had been in the bank and that he had sold some property before he left for Texas, for which he received the remainder of the money in addition to what he had worked for while around there, and before he was arrested. This is in substance defendant's testimony.

The defendant has assigned eight errors alleged to have been committed by the court in the trial of the case. First, he alleges that the court erred in overruling his motion for a new trial; second, the court erred in admitting evidence on the part of the state over the objection of the defendant, which evidence was incompetent, irrelevant, and highly prejudicial. These two assignments cover all the questions raised by the defendant in his case. It is urged by the defendant that the testimony in this case is wholly insufficient to sustain the verdict of the jury.

The question to be determined in this case is, Does the circumstantial evidence in this case justify and sustain the conviction? The only evidence produced by the state which in any way tends to connect the defendant with the taking of the cotton is that he was seen with Bill Brown early Friday night, the night the cotton was stolen, and

that he was seen in Caney the next day, the day Bill Brown sold the cotton, although not seen with Brown. The testimony of the defendant himself fully explains why he was with Brown Friday night and why he was in Caney inquiring about Brown Saturday. These are the only two circumstances that in any way tend to show that Sanders might have known that the cotton was taken or might have been in any way connected with the taking of the cotton. This amounts to a mere suspicion, but are they of such probative force as to justify a conviction and sentence of the defendant to the penitentiary, in the light of his testimony and actions showing his whereabouts during the night the cotton was taken?

This court has repeatedly held that:

"Where a conviction is sought upon circumstantial evidence alone, the circumstances proved must be consistent with each other, and inconsistent with any rational hypothesis other than defendant's guilt."

Tomlinson v. State, 27 Okla. Cr. 429, 228 Pac. 608; Wertzberger v. State, 25 Okla. Cr. 1, 218 Pac. 721; Hamilton et al. v. State, 25 Okla. Cr. 233, 219 Pac. 951.

In Hamilton et al. v. State, supra, in the second paragraph of the syllabus, the court said:

"In a prosecution for petit larceny, circumstantial evidence, which, at most, if unexplained, would only raise a suspicion of guilt, held insufficient to support conviction."

In this case the circumstances are fully explained by the defendant. He accounts for his whereabouts at all hours and at all times. His being with Bill Brown in the evening of the night the cotton is alleged to have been stolen raises a suspicion that he might have been connected with the taking of the cotton, yet we do not think

it is sufficient to sustain a conviction. The defendant up to the time of this alleged larceny shows to have been a hard-working boy, and should not be branded with the stigma of having committed a crime, the circumstances of which at most raise only a suspicion.

It is further urged by the defendant that the court erred in permitting the testimony of the acts of Brown, after he was taken into custody, and the statements of Brown in the absence of the defendant. This question has also been passed on by this court many times.

In Bohannan v. State, 25 Okla. Cr. 103, 215 Pac. 1078, the court said:

"Declarations of a defendant, made after the offense had been committed, in the absence of a codefendant, are admissible against himself, but inadmissible against the other defendant."

The testimony objected to by the defendant in this case and the statement and actions of Bill Brown were hearsay, and after the offense, if any, had been committed, and even if a conspiracy existed, it was not admissible. Patton v. State, 29 Okla. Cr. 66, 232 Pac. 454.

For the errors indicated, the judgment is reversed and remanded.

EDWARDS, P. J., and CHAPPELL, J., concur.