## FRANK RUCKER, JR., v. STATE.

No. A-9305. May 6, 1938.
(79 P. 2d 629.)

W. M. Hall, of Claremore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Ass't. Atty. Gen., for the State.

DOYLE, J. This appeal is from a judgment rendered upon the verdict of a jury finding the defendant, Frank Rucker, Jr., guilty of the crime of larceny of livestock and fixing his punishment at imprisonment in the state penitentiary for two years.

Motion for a new trial, duly filed, was on November 16, 1936, overruled. Thereupon the court rendered judgment on the verdict.

The charge was the larceny of "one white-faced Hereford calf, weight about 325 pounds, the personal property of R. M. McFarlin." Said larceny was alleged to have been committed in said county on or about the 6th of September, 1935.

The errors assigned are: That the verdict of the jury is not supported by the evidence and is contrary to law, and that the court erred in overruling the defendant's motion for a continuance.

Curtis Still testified that he lives about nine miles south of Claremore, on the McFarlin ranch, and had charge of that ranch and the cattle and other livestock on it, owned by R. M. McFarlin; that on the date alleged there was 1,022 head of cattle, including 375 calves, all white-faced Herefords; that the ranch was a little more than four miles square; that on September 6, 1935, he missed a white-faced yearling, weight about 325 pounds, a baby beef; that the evening before the defendant drove up in a truck to the ranch house, and in a conversation with him, the defendant said that he was hunting for a lost dog. The defendant then drove into the pasture, but did not come back by the ranch house; that the next day he was out in the pasture, and went up to where a cow was bawling and found that an animal had been butchered there. This was about two miles from the ranch house. He followed the defendant's truck tracks from the ranch house to the place where he found a pool of blood, about two feet across, nearby were the car tracks of the defendant's truck; there were no other car tracks in the pasture except those made by the defendant's truck, the day before, 8 o'clock in the evening. He notified the sheriff.

He further testified that with the sheriff and others he followed the tracks to where the truck had been driven out of the pasture; they then went to Claremore and in the Safeway Butcher Shop they saw a carcass that looked like the size and the weight that the McFarlin yearling would dress out.

The testimony of Mrs. Curtis Still was to the effect that she knew the defendant; that he was at the ranch house on September 5th, about 8 o'clock in the evening; that she heard a part of the conversation between her husband and the defendant; that the car tracks that the Rucker truck made going into the pasture and the tracks at the cattle guard on the east side where the truck went out were the same.

Four or five other witnesses testified in substance the same as to the truck tracks.

O. O. Oliver testified that he was a meat cutter, employed by the Safeway at Claremore; knew the defendant in business dealings; that his record shows that on September 6th, near 7 o'clock in the morning, he weighed up a yearling beef, 157 pounds, and paid the defendant for it; that a calf that dressed this weight would weigh between 310 and 325 pounds on foot; that the meat was cool, had not been killed that morning, and had not been in refrigeration; that he paid the defendant $12.56 for the beef; that a day or two before that he had given the defendant an order for that kind of a beef.

John Goodwin testified that he lived on Otter creek, near the McFarlin ranch; went with the sheriff in making the search; that they followed the car tracks from the blood pool in the McFarlin pasture to the town of Claremore, where they found the defendant had sold a carcass, fitting in size to that of the yearling killed in the McFarlin pasture on the night of September 5, 1935.

As a witness in his own behalf, the defendant testified that he lived at Radium Town, at the Cottage Hotel, and did butcher work for the butcher shops around town in Claremore; that on the 5th of September he had an order to fill for the Safeway Store; that he saw Stonewall Jones two or three days before that and bought a little calf from Jones for $10; that he had been to Inola that afternoon looking for and inquiring around for a little dog that he had lost, and was told that it was seen on the McFarlin ranch; that he drove up to the Curtis Still house, and Still told him that he had seen the dog over in the pasture eating a dead calf; that it was then between sundown and dark; that he talked to Still thirty or forty minutes before leaving, and went east into the pasture trying to find his dog; that when he left the pasture he followed the old road from the McFarlin pasture to the Berry Hill pasture and drove up

the road to a filling station, turned a mile east, and on to the Stonewall Jones place for the little bull calf that he bought from him two or three days before, and they caught it, hog tied it, and put it in the back seat, and that was the calf that he sold and delivered to the Safeway store; that he got something over $12 for it; that he sold the calf hide to Jack Archer, and offered in evidence the sale ticket; he denied that he had stolen the McFarlin calf.

He further testified that he had made a diligent search to have Stonewall Jones present at the trial, but could not find him, and did not know where he was.

On cross-examination he admitted that he had been convicted of bank robbery, pleaded guilty, and was sentenced to serve a term of 25 years, served about 28 months and was then paroled, and is on parole at this time.

It follows from the foregoing review that the sufficiency of the evidence to support a conviction was for the jury.

Where the evidence is circumstantial, and the circumstances are such as to reasonably justify the inference of guilt, the weight and value of such testimony are exclusively for the jury. It is only where the evidence obviously does not warrant the inference of guilt that this court will interfere. Otherwise the weight of circumstantial evidence, and the inference to be drawn from it, in almost every case, would finally be determined by the appellate court. We think a verdict of a jury based upon circumstantial evidence comes to us as any other verdict, and unless we can say that the inference of guilt drawn from the evidence is wholly unwarranted, we cannot interfere.

This court has repeatedly held that all that is required of the appellate court in determining the sufficiency of the evidence to support a conviction is to find that there is competent evidence in the record which forms a sufficient basis for the verdict of the jury. Wainscott v. State, 8 Okla. Cr. 590, 129 P. 655; Whitten v. State, 25 Okla. Cr. 447, 221 P.

115; Jamison v. State, 59 Okla. Cr. 62, 56 P. 2d 905; Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191.

The refusal of the court to grant a continuance asked on account of an absent witness is assigned as error. The motion and affidavit alleges that Stonewall Jones is a material witness for the defendant; that defendant caused a subpoena to be issued October 5, 1936, ordering his attendance. That:

"He expects to show by the said Stonewall Jones that on or about September 3, 1935, he bought from said Jones a pale red calf, which was delivered to the defendant late in the evening of September 5, 1935.

"Affiant further states that if this case is continued until the next regular term of this court that he will have the said Stonewall Jones present to testify in his behalf; that this application for continuance is not made for delay, but that substantial justice may be done."

An application for continuance on account of the absence of a witness must show diligence has been used to procure the witness or his testimony. When this is not made to appear, it is not error to overrule such application. Gentry v. State, 11 Okla. Cr. 355, 146 P. 719; Hunt v. State, 38 Okla. Cr. 294, 260 P. 512.

Under our statutes, the granting or refusing of such application is a matter within the judicial discretion of the trial court. In reviewing the refusal of a continuance, on account of an absent witness, the testimony taken in the trial is considered by this court for the purpose of determining whether the absent testimony was probably true, as well as whether it was material, if true.

The affidavit does not show the exercise of proper diligence to procure his attendance, and there was no showing of any probability of securing his attendance at a future date. The information was filed September 27, 1935, and the case was called for trial October 13, 1936, more than a year thereafter.

The trial court was probably of the opinion that the motion for continuance grew out of a desire for delay rather than for evidence.

In conclusion we simply add that it appears the trial was eminently a fair one. The jury were fully and carefully instructed as to the law and they found the defendant guilty of the offense charged, and we find no reason for disturbing their finding.

The judgment appealed from herein is accordingly affirmed.

BAREFOOT, J., concurs. DAVENPORT, P. J., not participating.