# JAMES W. SEARS v. STATE.

No. A-10347.    Feb. 7, 1945.

(156 P. 2d 145.)

Loys Criswell and David Tant, both of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and E. J. Broaddus, Asst. Atty. Gen., for defendant in error.

JONES, J.  The defendant, James W. Sears, was charged with one Gaston Gordon in the district court of Jackson county with the crime of burglary; after having been three times convicted of a felony, a severance was granted; the defendant was tried, convicted, and sentenced to serve five years in the State Penitentiary, and has appealed.

J. M. Carter owned and operated a drugstore and post office in the town of Martha.  On the night of October 6, 1941, the front doors to said building were pried open and several articles of personal property, including a various assortment of cigarettes and tobaccos, one bottle of Luminal tablets, and two 37 cent books of postage stamps, were stolen.  Also, a small safe was taken from the building and placed on two posts about eight feet in length.  The roads were muddy and the ground was soft from recent rains.  There were tracks discernible where the posts had been attached to the rear of an automobile and the safe dragged about a quarter of mile from the store where one of the posts had broken causing the safe to drop.  The safe had been opened at that place and it was there found the following morning.  The officers of Jackson county were notified and some of them came to Martha and made an investigation early in the morning while the tracks were still fresh and the imprint plainly discernible.  After the car which had dragged the safe had

disengaged the posts and left the safe, it had been driven on down the road half a mile where it skidded into a ditch and became stuck.

A farmer living near where the car was stuck testified that a man fitting the description of the defendant came to his house about 3 a. m., and requested his help in getting his car out of the ditch. This farmer testified that in his belief the man who came to his house was the defendant Sears, although he refused to positively identify him. This farmer refused to assist in getting the car from the ditch, but suggested that they see his neighbor who lived about one-quarter of a mile north of him.

This neighbor, Guy Cearley, testified that about 3 :30 a. m. a man awakened him at his home and asked to be pulled out of a mudhole. Cearley took his tractor and, with the man riding with him and directing him, went over a quarter of a mile to where a car was stuck on the side of a road. Cearley testified that there were two men at the car. That they produced a tow chain. That he pulled the car from the mudhole with his tractor. That the man who came to his house was a tall, slender man about defendant's size, height and all, and to the best of his judgment, was the defendant. That the car was an old Chevrolet.

The sheriff of Jackson county and his deputies testified to making plaster of paris casts of certain imprints left by the automobile tires driven by the parties who had committed the burglary. After getting a description of the men from the farmers near where the car was stuck, officers in adjoining counties were notified and the sheriff of Beckham county advised them that he knew of two parties who fitted the description. These men were the defendants, James W. Sears and Gaston Gordon. Gordon

owned an old model Chevrolet sedan. When the officers arrested him, the car was muddy with black mud, although the soil in Beckham county at Gordon's place was red, while the soil at Martha, where the crime was committed, was a black, sticky loam. A log chain and a wooden bar which was commonly known as a truck standard were taken by the officers from the car. This chain and truck standard, together with the posts which had been used to haul the safe, were identified by George Hamilton as his property which was stolen on the night of the burglary from his premises adjacent to the Carter store building.

In a search of the defendant Sears' home, the officers seized a bottle of Luminal tablets, 6 packages of Lucky Strike cigarettes, 1 package of Camel cigarettes, 1 package of Sensation cigarettes, 1 package of Top tobacco, 1 package of Bugler tobacco, 1 thirty-seven cent book of postage stamps. and a hypodermic syringe and needle.

At the trial, the owner of the drugstore testified that in his best judgment these cigarettes and other articles were some of those taken from his store. He related that the off-brand cigarettes had been in his store for a long time and had the old three-cent stamp on them, while the more popular brands of cigarettes had not been in his store so long and had the five-cent stamp which was required after the passage of a new cigarette tax act in the spring of 1941. The bottle of Luminal tablets had been in his store for over four years. The cap on the bottle was faded and showed its age. The owner of the store refused to say positively that the various articles taken from the defendant's home were those stolen from his building, but he did relate certain circumstances connected with their appearances which caused him to state that in his opinion they were the articles taken from his building.

On the following day, the officers went back to the home of the defendant and on the back porch found defendant's khaki clothing soaking in a water bucket. The trousers were muddy up to the knees with black mud like that from the place where the car was stuck. They also found on the porch a pair of defendant's shoes covered with the same kind of black mud. The shoes were taken to where the car had been stuck in the mud and fit perfectly in the tracks there.

One of the tires on the Gordon automobile was a new tire and the other three tires were well worn. The new tire was removed by the officers and introduced in evidence at the trial. Testimony showed that the tread made by the new tire was identical with the plaster of paris imprint taken by the officers at the place where the car had been stuck in the mud.

F. K. Doughty testified that while he was at a filling station in Martha, about 8:30 p. m., the night of the burglary, an old model car with an out-of-county license tag stopped at the filling station and was serviced. That the car was there for several minutes and was a gray car and because of its apparent age seemed peculiar to him. He later saw the same car parked outside of the jail in Altus. (This car at the jail was admittedly the Gordon car.) Doughty further testified that Gaston Gordon was driving the car and the defendant was sitting on the front seat with Gordon. He was positive in his identification.

Joe Flanagan testified that the defendant Sears and Gaston Gordon came into his cafe in the town of Sayre together about 10 or 11 o'clock a. m., preceding the commission of the burglary that night, went to a booth and sat down together.

The defense was in the nature of an alibi. The defendant produced two ladies who swore they had known the defendant for many years. That on the night of October 6, about 9:30 p. m., they became stuck in the mud near defendant's home and the defendant came to their rescue and assisted them in getting out of the mudhole. That they then went to defendant's home and stayed all night with defendant and his wife. That they sat and talked until 1 or 1:30 before going to bed. That the defendant did not leave his home at all that night.

Some other neighbors testified that Mrs. Lowrence, a neighbor of Sears, had died in September, 1941. That prior to her death, the defendant Sears had sat up with her and at the direction of the doctor had given her Luminal tablets to ease her pain. The husband of the deceased woman testified that after her death, he gave the bottle of Luminal tablets to the defendant.

Matt Ellison testified that he ran a country store near the defendant's home. That he was constantly selling the defendant cigarettes and tobacco, including many cigarettes of what is commonly known as off-brand, such as Sensation and Avalon cigarettes.

It was stipulated that the defendant had sustained the former convictions for felonies as alleged in the information. In fact, it was brought out in cross-examination of defendant that he had sustained four prior convictions instead of the three alleged in the information. These prior convictions, however, were for the violation of the narcotics law and involve the sale and possession of narcotics.

It is first contended that the court erred in admitting over the objection of the defendant the property seized at defendant's home. In this connection, the defendant pre-

sents two propositions. The first is that the search was made on a whisky search warrant and that 'the officers were not authorized to seize any articles other than whisky; and, secondly, the defendant contended that the right incidental to a lawful arrest to search the premises and immediate surroundings where the arrest is made does not extend to the search of a dwelling where the arrest is not made therein, and the commission of the crime for which the arrest is made is not connected therewith.

The presumption is in favor of the regularity of all proceedings, and where the defendant raises the question of the illegality of the search, the burden is upon him to introduce evidence to sustain his motion. Staley v. State, 73 Okla. Cr. 335, 121 P. 2d 324; Watson v. State, 73 Okla. Cr. 58, 117 P. 2d 808; Holland v. State, 58 Okla. Cr. 404, 54 P. 2d 216.

When the objection to the admissibility in evidence of certain exhibits first arose, it was in connection with some articles taken from the car of the codefendant, Gaston Gordon. This objection was properly overruled. If for no other reason, the objection would not have been good because the accused could not object to the search of another's automobile.

A sufficient showing had been made to connect the defendant with being in Gordon's car the previous night and that this car had been used in the burglary. With that connection, a proper predicate had been laid to justify the admission of these articles in evidence against the defendant.

The next objection to the admissibility of evidence arose when the sheriff identified the shoes and clothing found on the back porch of the defendant after his arrest and incarceration in jail.

In the case of Herren v. State, 74 Okla. Cr. 432, 127 P. 2d 384, it is held:

"Where accused has been arrested and charged with felony, officers may legally search his premises in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, and articles found by reason of such search, otherwise admissible, may be used as evidence at the trial."

See, also, Sallee v. State, 51 Okla. Cr. 414, 1 P. 2d 794; Luker v. State, 60 Okla. Cr. 151, 62 P. 2d 255.

Two searches of the defendant's premises were made. In the first search, the cigarettes and other personal property allegedly taken from the store were seized. The search warrant used by the officers was never introduced in evidence. As to what it alleged, we are not advised, except on cross-examination of the sheriff he testified that the search warrant was a whisky search warrant. Although the defendant filed a motion to suppress evidence prior to the trial, no proof in support of his motion was presented, and since the burden was upon him to make a showing of the invalidity of the search, the court did not err in overruling the motion.

When the cigarettes and other articles of personal property seized by virtue of the search warrant were first presented at the trial, it was in connection with the testimony of the witness Carter, whose store had been burglarized. He described the articles which had been stolen from his store and when the cigarettes and Luminal tablets seized by the officers were presented to him, and later offered in evidence, no objection was made to their admissibility. Assuming, but not holding, therefore, that the seizure of these articles by the officers was under a void search warrant, still the right to assert the invalidity of the search is for the benefit of the accused, and this right

is waived by failure to object when the disputed articles are offered in evidence.

Lastly, it is contended that the evidence is wholly insufficient to support the verdict of guilty, and, in this connection, it is urged that since the evidence against the accused is wholly circumstantial, it did not exclude every other reasonable hypothesis except that of defendant's guilt.

It is true that in a case based solely upon circumstantial evidence before a verdict of guilty will be permitted to stand, the circumstances proved must not only be consistent with the guilt of the defendant, but inconsistent with his innocence, and exclude every other reasonable hypothesis other than that of guilt. Davis v. State, 18 Okla. Cr. 112, 193 P. 745; Penrod v. State, 38 Okla. Cr. 46, 258 P. 1052; Sanders v. State, 43 Okla. Cr. 69, 277 P. 605.

It is equally well settled that where a conviction rests upon circumstantial evidence and the circumstances are proven from which the reasonable and logical inference of guilt clearly arises and which excludes any reasonable hypothesis except the guilt of the defendant, although the evidence is conflicting, this court will not disturb the verdict for the insufficiency of the evidence. Morris v. State, 67 Okla. Cr. 404, 94 P. 2d 842; Herren v. State, 69 Okla. Cr. 57, 97 P. 2d 96, 100 P. 2d 286; Rucker v. State, 64 Okla. Cr. 259, 79 P. 2d 629.

Here we find a web of circumstantial evidence which irresistibly points to the guilt of the accused. The defendant and his codefendant were seen together in a booth in a cafe in Sayre the morning preceding the night of the burglary. The same two men were positively identified

as being in an old gray car with an out-of-county tag in the small town where the burglary was committed after dark the night of the burglary. The circumstances connecting the Gordon car with the commission of the burglary are very strong. The mud on the car, the rubbed shiny place on the inside of the fender which apparently was made when the safe was being dragged, the definite identification of the automobile track left at the scene of the burglary with the imprint made by a tire from Gordon's car, the finding of the chain and truck standard in Gordon's car which were stolen in the town of Martha, near the drugstore, on the night of the burglary, all point to the use of that automobile in the burglary. The description of the man who went to the two farmers seeking help in getting out of the mudhole tallied with the description of the defendant, even to the clothing that he wore. The defendant's possession of a large variety of cigarettes similar to those taken in the burglary, the Luminal tablets, and the book of stamps, together with the finding of the black, muddy clothes at defendant's home are all strong circumstances pointing to the guilt of the defendant. His alibi and explanation of his possession of these articles merely raised a conflicting issue for the determination of the jury.

The judgment of the district court of Jackson county is affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.