CALLIE EDWARDS v. STATE.

No. A-10920.   Oct. 13, 1948.

(198 P. 2d 656.)

400

C. C. Williams, of Poteau, for planitiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., and Joseph W. Foster, County Atty., LeFlore County, of Poteau, for defendant in error.

BAREFOOT, P. J.   Callie Edwards was charged in the district court of Le Flore county with the crime of grand larceny; tried, convicted and sentenced to serve one year in the State Penitentiary, and has appealed.

The charge was the larceny of three spools of 12 gauge, 39″ net wire of the value of $35.85, the personal property of Mrs. Claudia Laramore.

In his petition in error the defendant sets out six assignments of error, but in his brief presents only three assignments, and concludes, "which constitutes, when taken as a whole, that the verdict of the jury is not sustained by the evidence and is contrary to law."

In support of his contention that this case should be reversed, defendant relies upon the case of Ritter v. State, 84 Okla. Cr. 418, 183 P. 2d 257, in which the defendant was convicted of the illegal possession of intoxicating liquor.   That was a case based upon circumstantial evidence, and the court held that the evidence was

not sufficient to connect the defendant with the possession of the liquor in question.

It is true, as held in the Ritter case, that in a case based solely upon circumstantial evidence, before a verdict of guilty will be permitted to stand, the circumstances proved must not only be consistent with the guilt of the defendant, but inconsistent with his innocence and exclude every other reasonable hypothesis other than that of guilt. Davis v. State, 18 Okla. Cr. 112, 193 P. 745; Penrod v. State, 38 Okla. Cr. 46, 258 P. 1052; Sanders v. State, 43 Okla. Cr. 69, 277 P. 605; Sears v. State, 79 Okla. Cr. 437, 156 P. 2d 145.

It is equally well settled that where a conviction rests upon circumstantial evidence, and the circumstances are proven from which the reasonable and logical inference of guilt clearly arises and which excludes any reasonable hypothesis except the guilt of the defendant, although the evidence is conflicting, this court will not substitute its judgment for that of the jury and the trial judge, who were in much better position, after hearing and seeing the witnesses, to determine the issues than is the appellate court. Where the evidence is conflicting, the weight of the evidence and credibility of the witnesses are for the jury. Morris v. State, 67 Okla. Cr. 404, 94 P. 2d 842; Herren v. State, 69 Okla. Cr. 57, 97 P. 2d 96, 100 P. 2d 286; Rucker v. State, 64 Okla. Cr. 259, 79 P. 2d 629; Courtright v. State, 79 Okla. Cr. 270, 154 P. 2d 588; Grooms v. State, 77 Okla. Cr. 448, 142 P. 2d 862; Graham v. State, 80 Okla. Cr. 159, 157 P. 2d 758.

Here we find a chain of circumstantial evidence which irresistibly points to the guilt of the accused. Mrs. Laramore testified to the loss of the three spools of wire, which had been left on a concrete block by the side of a

store building across the highway and a block from her home, in the town of Muse, LeFlore county. She saw the wire there on the evening of June 11, 1946. The next morning her father missed the wire, and reported to her, and they found where it had been rolled from the place where stored, through clover and Bermuda grass 510 steps to the bank of the Kiamichi river. There they found truck tracks. She reported the loss to the officers, and she and her father, with a deputy sheriff, went to the home of defendant, where they found one spool of 39″ net wire and one spool of 20″ wire, in his barn. She testified to finding clover in the wire.

Mr. Morphew, the father of Mrs. Laramore, corroborated her testimony, and also testified to going from his daughter's home on the night of June 11th, across the river to his own home, and of seeing a truck parked by the river at the place where the wire apparently "left the ground." He returned to the home of his daughter in a short while, and the truck was still parked there. He saw no one in the vicinity of the truck. He testified that the grill on the truck was broken, and an examination of the tracks made by the truck the next morning disclosed that all of the tires were smooth, except the left inside tire on the rear dual wheel. He later saw this truck in Talihina, and defendant stated that the truck belonged to him.

Virgil Wood accompanied the father of Mrs. Laramore to his home across the river and back on Tuesday night, June 11th, and corroborated his testimony concerning the location of the truck, and that he later identified the truck as that owned by the defendant.

Jack Bishop, a deputy sheriff, testified that the loss of the wire was reported to him on June 12th; that he

could and did "track the wire by the weeds being mashed down" to the place on the river bank where they found the truck tracks; that the tracks made by what he described as a ton and a half truck with dual wheels on the rear, corresponded exactly with the tires on defendant's truck. He accosted the defendant on the streets at Pine Valley, and told him about the loss of the wire. Defendant told him he had some wire at his barn, and offered to take him down to look at it. The witness got Mrs. Laramore and her father, the father rode in the truck with defendant, and they went to his barn, where they found the wire, as testified to by Mrs. Laramore. There was clover in the wire.

The father of the defendant testified that he bought the two spools of net wire found in defendant's barn for his son in Mena, Ark., and produced a sales slip, showing the sale of "1 net wire $12.35. 1 net wire $8.18." This sales slip, dated 6-4-45, was introduced in evidence. There was nothing on the slip to show the name of the merchant, or where the wire was purchased.

Velva Taylor, a neighbor farmer, testified that at the time defendant moved to the location where the wire was found, witness opened a gate for defendant, and saw two or three spools of net wire on his truck. He was in need of wire, and offered to buy it, but defendant declined to sell.

Defendant's wife, his brother and the brother's wife, and Fred Munson all testified that on Saturday afternoon, June 8, 1946, they accompanied the defendant when he drove in his truck up in the mountains, and spent the night. They were picking huckleberries, and returned on Sunday afternoon. They all testified that on the way up they stopped at a place on the river and got

water to take with them. They stopped at the identical spot where Mr. Morphew and Mr. Wood saw the truck parked between 9 and 10 o'clock on the night of June 11th, and where the deputy sheriff, Mrs. Laramore and her father testified that the wire "left the ground," and where they found the truck tracks on Wednesday, June 12th. The ground was dry and sandy.

Defendant testified in his own behalf, positively denied taking the wire, and corroborated the testimony of his father with reference to the purchase of the wire in Mena, Ark., and the other witnesses concerning the night spent on the mountain, and stopping the truck on the river bank to get water.

On rebuttal the state produced Herbert Moody, who testified that after defendant had been arrested, charged with the theft of the wire, he found a roll of net wire submerged in his pond about a quarter of a mile from the home of defendant. He pulled the wire out of the pond and took it to the home of the defendant, "Because it was the only house around there any place." He testified that defendant admitted placing the wire in the pond, and when asked by witness why he did so, answered: "I bought the wire and they arrested me for stealing some wire, and I knew if they stuck me they would take it away from me." He further testified that defendant asked him to take the wire home with him, but he refused to do so and rolled it out of his wagon and left it in defendant's yard.

Defendant was recalled, and asked by his attorney: "You heard him say when he brought the wire from his lake up there—you heard him say you admitted putting it in there and the reason you did it—or in substance, you wouldn't get your wire and you wanted him

to take it on home?  A Yes, I heard him say that.  Q. Is that true?  A. No, sir."

While the evidence in this case is wholly circumstantial and is conflicting, the evidence of the state was sufficient, if believed by the jury, to support the verdict of guilty.

Counsel in his brief states that "It will be apparent that the jury would not have convicted the plaintiff in error had not the witness Herbert Moody testified in rebuttal."

Defendant admits that the testimony of this witness was competent for the county attorney to introduce in his evidence in chief, but complains that his name did not appear in the list of witnesses, although the county attorney had information of the nature of the testimony of the witness; and complains of the unfairness of this practice among county attorneys.  At the time this witness testified, no objection thereto was interposed by counsel for defendant.

While the defendant was on the witness stand, the county attorney asked him, on cross-examination, where he got the wire found in Herbert Moody's pond, and he answered that he knew nothing about any wire being found in Herbert Moody's pond. He was then asked if Herbert Moody did not find some wire in his pond and take it to defendant's place, and ask if he placed it in the pond and defendant told him that he did put the wire in the pond because this case was up and defendant was afraid they would take it away from him, to which the defendant answered "No."

The predicate having properly been laid for the admission of this testimony, we think it was admissible for

the purpose of showing an act or statement against interest made by the defendant. Bowman v. State, 82 Okla. Cr. 199, 167 P. 2d 663; Tillman v. State, 82 Okla. Cr. 276, 169 P. 2d 223.

Either party is entitled to introduce evidence to rebut that of the other, and where the state offers relevant testimony in rebuttal, the fact that such evidence might have been introduced in chief does not necessarily prevent its introduction as evidence in rebuttal. The introduction of such evidence is a matter of discretion of the trial court, and will not be ground for reversal unless an abuse of this discretion is shown; and where no objection is made or exception saved, the alleged error is waived, unless fundamental. Quinn v. State, 55 Okla. Cr. 116, 25 P. 2d 711; Tingley v. State, 16 Okla. Cr. 639, 184 P. 599; Bowman v. State, supra.

After a careful consideration of the entire record, we have found no fundamental error which would justify a reversal of the judgment of conviction.

The judgment of the district court of LeFlore county is therefore affirmed.

JONES and BRETT, JJ., concur.