Joseph Verland HARDESTY and Jackie Eugene Boyd, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–76–426.

Court of Criminal Appeals of Oklahoma.

Oct. 4, 1976.

Morehead, Savage, O'Donnell, McNulty & Cleverdon, Jack L. McNulty, Jr., James R. Elder, Tulsa, for appellants.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

The Appellants, Joseph Verland Hardesty and Jackie Eugene Boyd, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–1603, for the offense of Second Degree Burglary, in violation of 21 O.S.1971, § 1435. The jury sentence of four (4) years' imprisonment was suspended and defendants were placed on four (4) years' probation, from which action defendants bring this timely appeal.

The prosecution's initial witness was Harry Bernbaum, who stated that he was the owner of the Oklahoma Lighting Distributors, an enterprise involved in the sale of electrical supplies. These supplies are primarily kept in a warehouse located at 401 West 1st. On July 17, 1975, Bernbaum was present at this warehouse and upon departure at 6:00 p. m. he activated the building's Honeywell protective electrical systems. At 1:30 a. m., July 18, 1975, he returned to the building in response to a phone call stating that the alarm system

had been "tripped." At the scene were a number of police officers and the two defendants, who were in custody. A hole had been created in the north side of the sheet metal structure and the interior was in disarray. Bernbaum said he had made an inspection of the building's exterior that very day and the hole was not present at that time. Further, he and an officer uncovered a flashlight and various hand tools buried in the sand close to the hole. Additionally, they discovered two pair of gloves about fifty feet from the opening. The property where these events occurred is sandy, with plant growth to a height of two feet and bordered on the north side by railroad tracks.

John Nowinski testified that on July 17, 1975, he was employed by the Honeywell Protection Services and had occasion to answer an alarm call at 401 W. 1st. He received the initial alarm reading at 12:36, and arrived at the scene at 12:38. Nowinski's testimony concerning his communications with his office, which related that the alarm was still "tripping" five minutes after he arrived, was admitted over defense counsel's objections that it was hearsay. The witness identified the defendants as the two men in police custody.

Officer David Stice's testimony held him to be on duty from 9:00 p. m. July 17, 1975, to 4:00 a. m. July 18, 1975. In answer to an alarm call he arrived at 401 West 1st. about 12:39. Upon seeing one Officer Cole at the southeast corner of the warehouse, Stice and his patrol dog paralleled the western wall. Subsequently, Stice joined Cole at the northeast corner of the warehouse and, he related, the defendants walked out "from the back of the building." At first sighting, the defendants were about fifty feet from the hole. The defendants were arrested and, due to the peculiar boot marks left in the sand, Stice was able to trace their path directly to the opening in the warehouse. Stice was unable to discover any wet sand in the area and, hence, verify defendants' story that they had been going to the bathroom in back of the building. Accompanied by his

dog, the officer then searched the interior of the warehouse and found it devoid of life.

The State's final witness, Officer Clarence Baker, also responded to the alarm call at 401 West 1st. on the morning of July 18, 1975. When the building was secured and the defendants were in custody, Baker and Mr. Bernbaum discovered and dug up the flashlight and tools previously testified to. Baker stated that the flashlight was functional and had not been buried very long.

At this juncture the State rested. Defendants demurred to the prosecution's evidence and the same was overruled after considerable in chamber discussion.

The defendants' sole witness was Gene Swaze. A C.I.A. employee for twelve years and a private investigator for eight years, Swaze related that he had taken a number of photographs of a building at 401 West 1st. at the direction of the defendants. The testimony divulged that, due to the L-shape of the building, one would have to be more than five feet from its northwest corner in order to view the entire northern side, the side where the hole, the tools, and the defendants were found.

■ The defendants, under their first assignment of error, assert that the trial court admitted impermissible hearsay testimony which proved prejudicial to defendants. This argument directs itself at John Nowinski's testimony regarding his radio conversation with the Honeywell dispatcher. The discussion found the alarm to be "tripping" five minutes after Nowinski arrived at the warehouse, and it was circumstantial evidence of an entry. Indeed, this is hearsay adrift on the sea of illegality and without an exception to harbor itself in, yet its effect on this appeal is governed by our previously expressed stand on hearsay. Implicit in *Maiden v. State,* Okl. Cr., 273 P.2d 774 (1954), and often reiterated and developed, is our belief that:

"The reception of hearsay evidence over objection is error. Whether it is revers-

ible error depends upon all the facts and circumstances of the case and the prejudicial effect which the reception of such evidence might have had on the jury."

See, fifth paragraph of the Syllabus in *Maiden v. State,* supra; *Young v. State,* Okl.Cr., 373 P.2d 273 (1962); *Gonzales v. State,* Okl.Cr., 388 P.2d 312 (1964); *Brewer v. State,* Okl.Cr., 414 P.2d 559 (1966).

■ Viewing the present case through this lens, we find the defendants' cause to be faulty. The objectionable testimony attempts, circumstantially, to establish but one fact, i. e., an entry. This element had already been sculpted by Nowinski's prior testimony that not five minutes before this reported conversation he witnessed the first "trips" himself at the central dispatch. The subsequent testimony was only a replay of the former and not so harmful as to buttress defendants' contentions of prejudice.

■ Secondly, defendants assign as error the alleged failure of the prosecution to prove beyond a reasonable doubt that defendants entered the building. Undeniably an altogether necessary element of the crime, this entry need not be shown directly. Wholly circumstantial evidence which is consistent with guilt and inconsistent with innocence will support a conviction when it excludes all reasonable hypotheses other than guilt. *Inklebarger v. State,* 8 Okl.Cr. 316, 127 P. 707 (1912); *Sanders v. State,* 43 Okl.Cr. 69, 277 P. 605 (1929); *Williams v. State,* Okl.Cr., 478 P. 2d 359 (1970). In the present case an alarm was tripped at 12:36, and testimony states that this can only result when someone is inside the building. A police search of the surrounding premises just minutes later uncovers no persons, yet suddenly the defendants appear fifty feet from the warehouse, traveling away from the building. Their boot tracks lead straight back to a hole which did not exist the day before, and cutting tools and a flashlight are found close by. No wet sand is found to corroborate the defendants' excuse for their being on the premises. This being the evidence, the State's case does not fail the test required of it.

■ The next assignment of error alleges the State's inability to prove the necessary element of intent to steal. The defeat of this contention is forecast by our disposition of the defendants' second assignment. Bearing in mind our holding that the State has sufficiently shown an entry by defendants, we need only refer to *Lyons v. State,* Okl.Cr., 516 P.2d 283 (1973), wherein this Court correctly states:

". . . When it is shown that one accused of burglary broke in and entered the premises in the nighttime, it may ordinarily be presumed that he did so with the intent to steal."

See also, *Ryans v. State,* Okl.Cr., 420 P.2d 556 (1966).

■ Defendants' fourth assignment of error complains that jury instructions No. 4 and No. 5 create an ambiguity which allows the conviction without a finding of an entry. Defendants correctly state that jury instructions should not become entangled with impertinent recitations of the law. Such actions are erroneous, yet they cannot be considered standing alone and unless the instructions, in their entirety, are so fundamentally erroneous as to deprive defendants of a substantial right, the case will not be reversed. *Barber v. State,* Okl.Cr., 388 P.2d 320 (1964). Viewing the instructions thusly, exposes an acceptable statement of the law which forces a rejection of defendants' contention. Instruction No. 5, alone, while worded in an unfortunate manner, is nothing more than a definition of a breaking and fails to establish the defendants' contended ambiguity.

Lastly, the defendants assign as error a jury verdict, which they allege was not supported by the evidence. This assertion is composed of defendants' previous assignments of error, all of which we have rejected. Finding the case's evidence to be

admissible and sufficient, and discovering no fundamental error, we cannot disturb the jury's verdict. *Morris v. State,* 67 Okl.Cr. 404, 94 P.2d 842 (1939); *Shoemaker v. State,* Okl.Cr., 479 P.2d 621 (1971).

For the above and foregoing reasons, the judgments and sentences appealed from are hereby *AFFIRMED.*

BRETT, P. J., and BLISS, J., concur.