**Billy Joe MARTIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–78–321.**

Court of Criminal Appeals of Oklahoma.

June 21, 1979.

George W. Gay and John B. Ogden, Oklahoma City, for appellant.

Larry D. Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Jim Wilcoxen, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

The appellant, Billy Joe Martin, hereinafter referred to as defendant, was charged, in the District Court, Okmulgee County, Case No. HCRF–76–28, with the offense of Murder in the Second Degree. He was found guilty by the jury of the lesser offense of Manslaughter in the First Degree, in violation of 21 O.S.1971, § 711. His punishment was set at four (4) years' imprisonment. From said judgment and sentence, defendant has perfected an appeal to this Court.

A summary of the testimony of the State reflects that on the evening of May 29, 1976, the deceased, Charles Casselman, and his close friend, Bob Berry, were at the American Legion Hut in Henryetta, drinking beer. They had been engaged in such activity since shortly after noon. The defendant approached them and started arguing with Casselman about a prior incident. Defendant invited Casselman to go outside, and they both left the bar. Berry followed them shortly thereafter and observed the defendant pointing a gun at Casselman. Berry ran back toward the bar to call the police and heard two shots. He looked back out the door of the bar and observed the defendant fire a third shot at Casselman from a range of ten to twelve feet. Berry did not see any kind of weapon in Casselman's hand.

The defendant left the scene and went to a nearby house. He informed the occupant, Rosie Smith, that he had shot a man at the American Legion and that he wanted to use her telephone. She refused to allow him to use her telephone and he went to another house, belonging to Gene Williams. Defendant told Williams that he needed help in that he had shot a man who had come at him with a knife. He offered to pay Williams $300.00 if he would take him to Okemah, Oklahoma. Williams summoned the police, who placed defendant under arrest. The defendant was bleeding from the mouth and had a smell of alcohol about his person. Two wounds were found in the upper portion of Casselman's body and one in the left thigh near the groin.

The defendant's testimony established that the deceased had previously threatened to kill him because of an altercation which occurred at the deceased's bar in August of 1975. The defendant testified that on the evening in question Casselman called him over and asked him to go outside. Casselman struck him on the back of the head with some hard object. Defendant fell to the ground and Casselman kicked him about the face and body. Defendant got to his feet and they exchanged blows. Casselman pulled out a knife and started toward him. Defendant ran to his car and got a gun. He warned Casselman to drop the knife. Casselman lunged at him with the knife and he fired two shots.

Rebuttal testimony was introduced to the effect that the deceased did not make threats against the defendant.

Defendant asserts in his first assignment of error that the trial court erred in admitting into evidence photographs of the deceased. He argues that the photographs had no probative value and were admitted for the sole purpose of inflaming the jury. The Attorney General counters this suggestion by urging that the photographs had probative value in that they were utilized by the pathologist relating the trajectory of the bullets and points of entry and exit.

The general rule concerning the admissibility of potentially inflammatory photographs was restated by this Court in the recent case of *Riggle v. State*, Okl.Cr., 585 P.2d 1382 (1978), as follows:

"In cases where the photographs in question depict a scene which is gruesome in nature, the trial court must consider whether the probative value of that particular reproduction outweighs the prejudicial consequences that potentially accompany its admission. This Court will not interfere with such a determination unless it appears that the trial court's discretion was abused. *Glenn v. State*, Okl.Cr., 333 P.2d 597 (1958), and *Williams v. State*, Okl.Cr., 542 P.2d 554 (1975). . . ."

■ In the instant case, the photographs in question are two slides which depict the entrance and exit wounds on the deceased's body. They are not bloody or gruesome. We are of the opinion that the trial court did not abuse its discretion in determining that the probative value of the photographs as to the trajectory of the bullet outweighed the danger of prejudice which could have been incidentally aroused in the jury. We therefore find this assignment of error to be without merit.

The defendant contends in his final assignment of error that the trial court erred in permitting the deceased's former wife to testify in rebuttal. The defendant argues that she should not have been permitted to testify in that she was not endorsed as a witness and because she remained in the courtroom after the rule of sequestration was invoked.

■ We first observe that it has long been the rule of this State that it is not required that a witness be endorsed on the information if the testimony of the witness is offered clearly in rebuttal. See *Boydston v. State*, 79 Okl.Cr. 172, 152 P.2d 701 (1944).

■ We would further observe that the rule of sequestration does not apply to rebuttal witnesses. In dealing with a similar contention in *Wald v. State*, Okl.Cr., 513 P.2d 330 (1973), we stated:

"In defense counsel's second proposition he submits the trial court erred in permitting a rebuttal witness to remain in the courtroom after the rule of sequestration was invoked. In this regard we need only note the language in *Sutterfield v. State*, Okl.Cr., 489 P.2d 1345 (1971) which states as follows:

" ' . . . [W]e need only observe that when the court orders witnesses to be sworn and excluded from the courtroom during the taking of testimony, and a witness violates such rule, it is within the discretion of the court to allow or exclude the testimony of such witness. We further observe that the other witnesses complained of as being [in] the courtroom, were all rebuttal witnesses, and, therefore, not within the rule.'

"We therefore find this proposition to be without merit as error was not committed in permitting a rebuttal witness to remain in the courtroom during the time testimony was taken at trial."

The judgment and sentence is, accordingly, *AFFIRMED.*

CORNISH, P. J., and BRETT, J., concur.