Michael J. FIOROT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-81-270.

Court of Criminal Appeals of Oklahoma.

Feb. 25, 1982.

---

552

Joseph M. Watt, Altus, Red Ivy, Chickasha, for appellant.

Jan Eric Cartwright, Atty. Gen., Michael Avant-Pybas, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Appellant Michael J. Fiorot, hereinafter referred to as defendant, was charged in Jackson County District Court, Case No. CRF–80–25, with the crime of Murder in the Second Degree. The defendant was tried by a jury, which returned a verdict finding him guilty of the offense and assessing his punishment at fifteen (15) years' imprisonment.

Defendant in his first assignment of error asserts that the court erred in refusing to sustain defendant's demurrer at the close of the State's case in chief and defendant's motion for directed verdict at the conclusion of the evidence. It is alleged that in both instances the evidence was circumstantial and insufficient to sustain a verdict of guilty.

Testimony presented at trial established that between 8:00 a. m. and 8:30 a. m. on December 22, 1980, the defendant picked up his four (4) month old daughter, Casandra, from his next door neighbor, Kathleen Swonger, where the defendant's wife, Tina, had left the child earlier that day. Mrs. Swonger's husband and her brother testified that nothing appeared to be wrong with the child when they left the residence that morning. Mrs. Swonger testified that the child seemed physically fit, although she did not touch the child that day. The defendant testified that when he picked the child up it had vomited on its blanket, and he had to clean the mess up when he got home.

Between 10:00 a. m. and 10:30 a. m. on the morning in question the defendant brought Casandra to Dr. Snowden at Altus Air Force Base. After examining the child Dr. Snowden ascertained that she needed the immediate services of a neurosurgeon and he accompanied her, via a Fort Sill Medi-Vac helicopter to Oklahoma City, where she died a few days later as a result of her injuries.

Dr. Fred B. Jones, a physician and forensic pathologist employed as Associate Chief Medical Examiner for the State, testified that he had examined the body of Casandra Fiorot and had ruled the death homicide. The child had died as a result of head trauma. His examination revealed a contusion over the top of the head. There was a large amount of subdural hemorrhage and the brain was swollen. In addition, the left eighth rib and both collarbones showed fractures. Dr. Jones could not find the injuries sustained consistent with the child's being dropped, nor could the injuries have been inflicted by a small child. In his opinion blunt force, a fist, could have caused the rib fracture and it was possible squeezing around the neck and shoulders could have resulted in the broken collarbones.

Charles Lawrence Carrier, who was the defendant's supervisor at the Fire Department, testified that on December 13, 1980, he had observed the defendant at the Longhorn Tavern. It was unusual to see the defendant out alone and, because the defendant had stated earlier that he was short of money, he asked the defendant what he was doing at the bar. The defendant had replied that he had to get out of the house because the baby was crying and it was driving him crazy.

When confronted on appeal with a demurrer to the evidence and a motion for directed verdict on grounds of insufficient evidence, this Court has held that where there is evidence to present a jury the Court of Criminal Appeals will not interfere. *Woodward v. State*, 567 P.2d 512 (Okl.Cr.1977). Viewing the facts in a light most favorable to the State, we hold that a prima facie case against the defendant was established, and therefore, all questions of fact were for the jury to resolve. *Renfro v. State*, 607 P.2d 703 (Okl.Cr.1980). Therefore, we are not disposed to overrule the decision of the trial court regarding the demurrer and motion for directed verdict.

Defendant also argues that the record is devoid of any direct inculpatory

evidence and that the only evidence the jury might have considered was purely circumstantial in nature, a majority of which was not completely consistent with guilt and inconsistent with innocence. It is well established that a criminal case may be proved circumstantially and reasonable inferences drawn therefrom have the same probative effect as direct testimony. *Collins v. State*, 561 P.2d 1373 (Okl.Cr.1977); *Logan v. State*, 493 P.2d 842 (Okl.Cr.1972); *Young v. State*, 373 P.2d 273 (Okl.Cr.1962). Additionally, circumstantial evidence need not exclude every hypothesis or negate any possibility other than guilt. *Logan v. State*, supra. Accordingly, defendant's first assignment of error is without merit.

■ Defendant in his second assignment of error asserts that the prosecution's closing arguments were not supported by the evidence and were merely appeals to the passion and prejudice of the jury. Defendant cites four specific instances of alleged improper argument, however, we find none of the arguments to be fundamentally prejudicial. Therefore, defendant's total failure to request that the jury be admonished to disregard the arguments resulted in a waiver of the alleged errors, and defendant's second proposition is without merit. *Neal v. State*, 506 P.2d 936 (Okl.Cr.1973).

■ Defendant, in his third assignment of error, maintains that the trial court erred when it allowed an acknowledged potential rebuttal witness to sit in the courtroom during the proceeding over defendant's objection and then allowed the witness to testify on rebuttal. It has repeatedly been held by this Court that the rule of sequestration does not apply to rebuttal witnesses, therefore, defendant's assertion in this matter is without merit. *Martin v. State*, 596 P.2d 899 (Okl.Cr.1979); *Wald v. State*, 513 P.2d 330 (Okl.Cr.1973); *Sutterfield v. State*, 489 P.2d 1345 (Okl.Cr.1971).

■ Defendant also alleges, in his third proposition, that the testimony of the rebuttal witness was improper because it was in regard to the lack of emotion shown by defendant in conversations concerning the death of his daughter. However, inasmuch as the defendant failed to object to the nature of the witness's testimony at the time the testimony was given, and since this Court, after review of the testimony, finds no fundamental error, defendant has waived consideration of this issue on appeal. *Thomas v. State*, 536 P.2d 1305 (Okl.Cr. 1975); *Edwards v. State*, 87 Okl.Cr. 399, 198 P.2d 656 (1948).

■ Defendant in his fourth proposition of error maintains that it was error for the trial court to allow into evidence a photograph showing a bruise on the deceased child's head. According to the record, the photograph was taken after the child's death and on the same day that the autopsy was performed. The photograph did not show the child's face but only showed part of the deceased's head from which the hair had been shaved to reveal a large bruise. Defendant contends that the photograph, though not gruesome, should have been excluded because it was of slight probative value and only served to prejudice the defendant. · With this assertion we cannot agree. The photograph, which was taken by the Associate Chief Medical Examiner, constituted positive confirmation of sworn testimony concerning the injury which resulted in the victim's death. See, *Seals v. State*, 92 Okl.Cr. 272, 222 P.2d 1037 (1950). It was an appropriate aid in showing to the jury the location, extent and nature of the child's injury. See, *Sykes v. State*, 572 P.2d 247 (Okl.Cr.1977). The photograph met the standard which has been developed by this Court for admission of photographs, since its probative value clearly outweighed any prejudice to the accused. *Ritchie v. State*, 632 P.2d 1244 (Okl.Cr.1981). See also, *Abel v. State*, 507 P.2d 569 (Okl.Cr.1973) where photographs of various bruises on a child's body were held to have probative value not outweighed by danger of prejudice in a manslaughter conviction. Therefore, we hold defendant's assignment of error in this regard to be without merit.

■ Defendant, in his fifth and final assignment of error, asserts that the district attorney improperly attempted to define

reasonable doubt to the prospective jurors during voir dire examination and again during his closing argument, and that such constitutes reversible error. Defendant however failed to object to the comments made during closing arguments thereby waiving all but fundamental errors, of which there are none. The comments during the voir dire in essence consisted of the prosecutor stating that reasonable doubt was whatever the jury thought it was. While it is error for the prosecutor to define the term "beyond a reasonable doubt", the prosecutor is not prohibited from making any reference to the term. *Byrne v. State*, 620 P.2d 1328 (Okl.Cr.1981). As has been recognized in the past however, the term "reasonable doubt" is a self explanatory phrase. *Johnson v. State*, 632 P.2d 1231 (Okl.Cr.1981). Therefore, any gloss attached to the term by the prosecutor's comment could not have prejudiced the defendant. See, *Johnson v. State*, supra. Accordingly, defendant's fifth assignment of error is also without merit.

On the basis of the foregoing, the defendant's conviction should be, and is hereby AFFIRMED.

BRETT, P. J., and CORNISH, J., concur.