Floyd Dillard SUTTERFIELD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16628.

Court of Criminal Appeals of Oklahoma.

Oct. 20, 1971.

Leroy Mushrush, George Campbell, Sand Springs, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Floyd Dillard Sutterfield, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma, for the offense of First Degree Rape; his punishment was fixed at fifteen (15) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the non-jury trial, Charlotte Ann Dutcher, age 14, testified that on September 30, 1969, she was living at the Sand Springs Home. On the day in question she was brought from the Hillcrest Hospital to the "big house" by the defendant's wife, Irene Sutterfield, and there ate lunch. She testified that Mrs. Sutterfield left the house sometime that afternoon and the defendant called her upstairs. She further testified that upon going upstairs, the defendant pushed her down on a bed, and had intercourse with her. She testified that the defendant had other acts of intercourse with her prior to this time. On cross-examination, she testified that the defendant had always been nice to her, and that she at first had denied the defendant's having intercourse with her, when one Betty Lou Cranston questioned her about it.

Virginia Eubanks testified that the superintendent's home was in Tulsa County. On cross-examination, she identified a letter she had written to the trustees of the home, demanding that she be re-instated in her

former position, or that she would report the defendant's actions to the authorities.

Deputy Lemons testified that he returned the defendant to Tulsa County from Mineral Wells, Texas, where the defendant had surrendered and waived extradition.

Dr. Toney testified that he examined the prosecutrix on December 19, 1969; that the findings of the examination were inconclusive, but that the prosecutrix's hymen had been penetrated, and that her vagina would admit two fingers. The State, thereupon, rested.

At the conclusion of the opening statement by the defendant's attorney, wherein he indicated that they rely upon the defendant's being elsewhere, except the home, on the date the alleged act occurred, the prosecution moved for a continuance, which was granted over the objection of the defendant.

Irene Sutterfield testified that she was the wife of the defendant, and on September 30, 1969, she was living with him at the Sand Springs home. She testified that on the day in question, she picked up the prosecutrix at the Hillcrest Hospital at approximately 20 minutes until 12:00 noon, and since they were too late to eat at the home, they ate at a drive-in in Sand Springs. They arrived back at her home at approximately 1:30 p. m. She testified that upon arriving at the home, Mrs. Cole and her daughter arrived simultaneously, and they all entered the house at the same time. The prosecutrix and Mrs. Cole's daughter watched television in the livingroom, while she and Mrs. Cole visited in the kitchen until approximately 3:15 p. m., when the prosecutrix, Mrs. Cole, and her daughter left in Mrs. Cole's car. She testified that her husband and Mr. Cole were working on a tractor in the vicinity of the residence, and that at no time was the defendant alone with the prosecutrix. On cross-examination, she testified that she did not see Charlotte Dutcher from about 3:15 p. m., until approximately 6:00 p. m. She testified that in December, they had decided to go to her sister's house in South Bend, Texas, for a short vacation, when they heard a re-

port on the radio of the defendant being sought. The defendant then turned himself in to the Texas authorities. She testified that in August of 1969, Dena Gillum had told her that the defendant had unbuttoned her blouse; she told the young girl that there was nothing to be upset about; and that the defendant was just like a father to her.

Doreen Cole testified that she was employed as a matron at the Sand Springs Home, and her husband was employed as a custodian. She testified that on the day in question, she arrived at the defendant's home at approximately 1:30 p. m. with her daughter. She testified that they entered the residence, and she and Mrs. Sutterfield remained in the kitchen while her daughter and the prosecutrix watched television. At approximately 3:15, she took the prosecutrix to her place of residence at the school. She stated that the defendant came in the house about 2:30 p. m., got a couple of Pepsi-Colas, and then left to work on a tractor. On cross-examination, she testified that she and her husband were good friends of the Sutterfields, and that they were instrumental in obtaining their employment at the Home.

Tommy Cole testified that he first observed the defendant on the afternoon in question at approximately 2:30 p. m., when the defendant arrived at the side of the tractor on which Cole was working. They worked on the tractor until approximately 3:00 p. m., when the defendant left to do some work near the "new widow's colony." He further observed the defendant talking to Mr. Loflin, trustee in charge of the Home, at approximately 4:00 p. m., near the "new widow's colony." On cross-examination, Mr. Cole testified that there was a garden hose kept in the basement of the defendant's church.

The defendant testified that he had never had intercourse with the prosecutrix; that he was never in the house alone with the Dutcher girl. On cross-examination, he denied ever driving back from the Shell Creek Camp with the prosecutrix by himself

on August 15, 1969, or that there was a firecracker thrown in the fireplace at the camp on that date.

J. Blan Loflin testified, in rebuttal, that he was the trustee in charge of the Sand Springs Home, and on December 17, 1969, he had an occasion to talk to Mr. and Mrs. Sutterfield in relation to a letter he had received from Mrs. Eubanks. After showing the letter to the defendant, he stated, "I am leaving today, Mr. Loflin." He testified that the accounts the defendant was responsible for were "exactly right to the penny."

Mary Jo Downey testified that she was the director of the Medical Records Department at the Hillcrest Medical Center in Tulsa. She identified a hospital record which reflected that Charlotte Dutcher was dismissed by the doctor at 9:00 a. m., and by the floor nurse at 10:30 a. m. on September 30, 1969. On cross-examination, she testified that she did not know of her own knowledge the exact time the prosecutrix left the hospital.

Lillie Forth testified, in rebuttal, that she was employed at the Sand Springs Home, and that on September 30, 1969, she first observed the prosecutrix somewhere between 11:00 and 12:00 a. m. She observed Charlotte Dutcher have a conversation with the defendant, who was eating lunch. She testified that on August 15, 1969, at approximately 9:00 p. m., she observed Charlotte Dutcher enter the house from the outside. She next observed the defendant come through the door of the dining room or basement stairs, swinging a key on his finger. She testified that the door to the basement was usually locked. She further testified that Charlotte Dutcher entered the house after coming from the east, and that there is an east outside door to the basement.

Janice Chronister testified as to conversations in December, 1969, with Mr. and Mrs. Cole, and the defendant's wife.

Dena Gillum, age 10, testified, that she talked to the defendant's wife sometime during the month of August, and complained of the defendant's actions toward her after church. The defendant's wife told her that, "it was nonsense and for me to get upstairs and shut up and don't tell no one."

Faye Hodges testified that on August 15, 1969, she was employed at the Sand Springs Home. She stated that after finishing her work, the defendant asked her if she would like to go home early. She locked the basement door and went to her car. After going to her car, she remembered that she had forgotten the newspaper, so she returned to the basement and observed Charlotte Dutcher in the basement. She further testified that no one had the key to the basement except herself, Mr. and Mrs. Sutterfield, the morning cook, and Don Taft. She last observed the defendant in the livingroom prior to leaving. On cross-examination, she testified that she was evicted from a house by the defendant's wife.

Debbie Gillum, age 15, testified that sometime in July or August she was at the Shell Creek Camp. She testified that someone put a firecracker in a fire, and that the defendant had sent everyone to bed. The defendant left with Charlotte Dutcher to go get something, and was gone from six to eight hours.

Charlotte Dutcher was recalled on rebuttal, and testified that sometime during August of 1969, she was at the Shell Creek Camp when a firecracker went off in the fire. The defendant made everyone go to bed and after that, she and the defendant returned to the main house in Sand Springs to get some clothes. He took her to the bedroom of his house and had intercourse with her. She further stated that on August 15, 1969, she had an occasion to go to the basement of the house, and the defendant again had intercourse with her; that after completing the intercourse, the defendant told her to go out the outside door of the basement, where she ran into Mrs. Forth.

The defendant called in surrebuttal, Elizabeth Ann Davis, who testified that she was at the Shell Creek Camp, and denied that a firecracker went off in the fire, that the defendant sent the children to bed, or that Charlotte Dutcher left the Shell Creek Camp with the defendant.

Irene Sutterfield was recalled and denied having any discussion with Janice Chronister in the presence of the Coles. She stated that she left her home to go to the Hillcrest Hospital to pick up the prosecutrix about 11:15 a. m.

The State stipulated that if Mr. and Mrs. Cole were called to testify in surrebuttal, that they would deny knowledge of any conversation between them, Mrs. Sutterfield, or the Chronister girl, in regard to any misbehavior on the part of the defendant.

Both the prosecution and the defense waived closing argument, and the court, thereafter, adjudged the defendant guilty. The following week, the defendant filed a Motion for Writ of Error Coram Nobis, and a hearing was conducted.

Charlotte Ann Dutcher testified that she was taken by her mother to the defendant's church on Sunday, and thereafter went to the defendant's home; that after talking to the defendant's wife, she told various people that she had lied on the witness stand; that she had lied, "because Mrs. Sutterfield said that he was going to be locked up, and he won't have a bed to sleep in, it's cold, and everything and she said he probably won't live not even a year in there." She further testified that she was placed in a detention center in Tulsa County, and on Tuesday, changed her story again, and told the District Attorney that she had lied to the people on Sunday; that her testimony at the original trial was true.

Donald Griggs testified that on Sunday, the prosecutrix told him that she had lied on the witness stand.

The prosecutrix's two brothers testified that on Sunday, she informed them that she had lied on the witness stand.

Deputy Lemons and Assistant District Attorney, Bill Ladd, testified that they had a conversation with the prosecutrix on Sunday, and that she informed them that she did not testify truthfully.

District Attorney, S. M. Fallis, Jr., testified that he did take a statement from the prosecutrix on Tuesday, and she told him that her statements of the prior Sunday were not true, and that she did testify truthfully at the trial. He further testified that he had nothing to do in relation to the prosecutrix's being put in a detention home in Tulsa County.

■ The first proposition asserts that the judgment of the trial court was unwarranted by the evidence. The defendant argues that there was no competent substantive evidence tending to show guilt, or to prove all necessary material allegations in the Information, and was wholly insufficient to show, beyond a reasonable doubt, that the defendant was guilty. In the recent case of Bryant v. State, Okl.Cr., 478 P.2d 907, we stated:

"This Court has consistently held that a conviction for rape may be had on the uncorroborated testimony of the prosecutrix, or on slight corroboration, where the testimony of the prosecutrix is not inherently improbable or unworthy of credence. Haga v. State, Okl.Cr., 422 P. 2d 221; Gaines v. State, Okl.Cr., 267 P.2d 612; and the many cases cited therein. However, this rule has been limited to the effect that we will carefully examine the record in cases of this character, to see that the evidence of the prosecutrix is clear and convincing, and is not inconsistent, incredible or contradictory. It is the exclusive province of the jury to weigh the evidence and determine the facts, and where the verdict is based on probable testimony, the reviewing court will not interfere with the verdict, though there is a sharp conflict in the evidence."

In the instant case, the defendant elected to be tried by a judge, rather than by a jury. The judge, thus, had the same province of the jury to weigh the evidence and to determine the facts. We are of the opinion that the evidence was sufficient to support the verdict of the trial court. See Adams v. State, Okl.Cr., 484 P.2d 1329.

■ The second proposition contends that the trial court failed to require sufficient corroboration of the prosecutrix,

whose testimony was contradictory, impeached, and improbable. At the conclusion of the hearing, on the Writ of Coram Nobis, the trial court stated:

"So, I bring myself back to this point. I concede that legally speaking the testimony of Charlotte Dutcher has been impeached by her own statements. And I know the rule of law in Oklahoma is very simply this: That a conviction for rape in the first degree cannot be had on the uncorroborated testimony of a victim or prosecuting witness unless there be corroboration of that testimony. So this Writ of Error Coram Nobis has placed me back, as Mr. Campbell pointed out, in the position of again re-examining the evidence under different rules. Because before this writ was heard we recognized that the conviction could stand upon uncorroborated testimony. But now I must re-examine my memory of the testimony. The Record in the case, and ascertain if in fact there has been corroboration." (CM 618)

The trial court, thereafter, concluded that the prosecutrix's testimony had, in fact, been corroborated by: (1) the testimony of the doctor that the girl had been penetrated to the extent that her vagina easily admitted two fingers, which would reflect that the girl had been penetrated more than one time; (2) that the August 15th episode, in which the prosecutrix was taken by the defendant, in the presence of witnesses, from the Shell Creek Camp, corroborated the prosecutrix's testimony; and, (3) that the basement episode was corroborated by witnesses that observed the prosecutrix in the basement, and that the defendant was observed coming out of the hallway leading to the locked door of the basement, swinging a key on his finger. We are of the opinion that the evidence was sufficient to warrant the trial court's findings that the prosecutrix's testimony was corroborated.

■ The third proposition asserts that the trial court erred in not sustaining his Demurrer at the conclusion of the Preliminary Hearing, by reason of the insufficiency of proof. The Preliminary Hearing transcript reflects that the prosecutrix's testimony was similar to that related at the trial. We have previously held that a Preliminary Hearing is not a trial, and does not require sufficient evidence to convict a defendant, but only to show that a crime was committed, and the probability that the defendant may have committed the crime. Capes v. State, Okl.Cr., 450 P.2d 842. We are of the opinion that the evidence presented at the Preliminary Hearing was sufficient to show that a crime had been committed and reason to believe that the defendant had committed such. We, therefore, find this proposition to be without merit.

■ The fourth proposition asserts that the trial court erred in allowing Virginia Eubanks and other witnesses to remain in the courtroom after invocation of "the Rule," and thereafter allowing each to testify. Although the transcript reflects that the trial court made a specific finding that the witness had not violated "the Rule" (Tr. 114), we need only observe that when the court orders witnesses to be sworn and excluded from the courtroom during the taking of testimony, and a witness violates such rule, it is within the discretion of the court to allow or exclude the testimony of such witness. We further observe that the other witnesses complained of as being in the courtroom, were all rebuttal witnesses, and, therefore, not within the rule.

■ The fifth proposition asserts "error of the court and misconduct of the district attorney in allowing the complaining witness to be removed from the Sand Springs Home to Francis Willard Home, thence to St. John Vianney Home and thence to the Juvenile Detention Center where she was locked up at night alone, until she repudiated her statement that her 'testimony during the trial was false, and that she had never had intercourse with Floyd Dillar Sutterfield or with any other man.'"

The record does not support defendant's conjecture that the prosecutrix was moved from place to place for the purpose of influencing her to change her testimony. The record further reflects that the prosecutrix was moved to the detention center not by authority of the District Attorney or the trial court, but rather by virtue of an Order issued by the Judge of the Juvenile Court. We further observe there is no evidence to support defendant's contention that the witness was coerced to change her story.

■ The sixth proposition contends that the trial court erred in granting the State a continuance on the basis of alibi, when no alibi was asserted. In his opening statement, the defendant stated that the proof would show that the defendant was at a place other than where the event allegedly occurred. The State, thereupon, requested the continuance, which was granted by the Court. We have previously held that the granting of a recess in a criminal case is within the sound legal discretion of the trial judge, whose ruling will not be disturbed on appeal, except for clear abuse of discretion. Richmond v. State, Okl.Cr., 456 P.2d 897. We are of the opinion that the trial court did not abuse its discretion in granting a two-day continuance, especially in view of the fact that the defendant has not shown in any manner that prejudice resulted from such continuance.

■ The seventh proposition asserts that the trial court erred in admitting the testimony of Doctor Toney. The defendant argues, under this proposition, that the examination was too remote in time from the date of the offense to be of probative value. The trial court's consideration of this evidence was apparent, when he stated:

"Of course, because of the length of time between the act alleged in the information and the time of the examination it would be medically impossible to determine whether or not the penetration was caused by a male sex organ. So, we have to look further to that doctor's testimony and we recall that the

doctor testified that the examination revealed that the girl could be entered easily with two fingers. But here again we get into evidence which properly came into this case relating to other acts of alleged intercourse between the defendant and the victim." (Tr. 456 & 457).

We are of the opinion that the trial court properly admitted the doctor's testimony and that it had probative value to ascertain the truthfulness of the victim's testimony of prior acts of intercourse.

The eighth proposition asserts that the trial court erred in overruling the defendant's Petition for Writ of Error Coram Nobis. We need only observe that at the conclusion of the hearing, that the trial court acknowledged that he must consider the prosecutrix's testimony to be impeached because of the conflicting statements, and as such, must make a determination if her testimony had been corroborated. For the reasons stated in proposition two, we are of the opinion that the prosecutrix's testimony was corroborated, and that the trial court properly denied the Writ of Error Coram Nobis.

The ninth proposition contends that the trial court erred in refusing to grant the defendant's Motion for New Trial. We have carefully examined this proposition and find the same to be without merit. We have previously held that a Motion for New Trial on grounds of newly discovered evidence is addressed to the sound discretion of the trial court, and in absence of a clear showing of abuse of discretion, the same will not be disturbed on appeal. Taylor v. State, Okl. Cr., 286 P.2d 730.

■ The final proposition asserts that there was apparent bias and prejudice of the trial court, as evidenced by the rulings, findings, extensive examination of witnesses, and statements in pronouncing judgment and sentence. We have carefully examined the entire record and are of the opinion that there is no showing of prejudice or bias on the part of the trial court. The trial court was sitting as a trier of facts, and properly elicited questions to cer-

tain witnesses concerning portions of their testimony to clarify specific points. In announcing the court's ruling, the trial court stated:

"I didn't ask to try this case. If I had had my rathers I wouldn't have tried it, but when the jury was waived, and it was assigned to me, as much as I dislike the undertaking I am not going to duck it and I haven't ducked it and I'm not going to duck it now. My point is, Gentlemen, simply this that aside from the attempted intimidation both ways on Charlotte Dutcher, aside from the assertions that one have cast toward the other in the trial of this lawsuit, I am seeking one thing and that is the truth, and I feel that I am going to be morally bound by what I conclude to be the truth. And when I reach the determination as to what I believe to be the truth it is going to be under the legal guidelines."

We are of the opinion that the defendant was afforded a fair and impartial trial, and that this proposition is without merit.

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

BRETT, J., concurs.