Max **GONZALIS**, Appellant,

v.

**The STATE of Oklahoma, Appellee.**

No. A-17492.

Court of Criminal Appeals of Oklahoma.

July 19, 1972.

Duane A. Woodliff, Henryetta, for appellant.

Larry Derryberry, Atty. Gen., Mike Jackson, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, Max Gonzalis, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Okmulgee County, Oklahoma, for the offense of First Degree Rape; his punishment was fixed at a term of not less than five (5) years nor more than ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the non-jury trial, Regina Owl testified that on August 10, 1971, her husband, Dennis, and the defendant picked her up when she got off work at approximately 3:00 p. m. Her husband informed her that he and the defendant were going to Stilwell that evening and would be back the following morning. At approximately 10:00 p. m. someone knocked at the door and when she asked who it was they refused to answer. At about 11:30 p. m. someone again started knocking at the door and again refused to identify themselves. About fifteen minutes later the banging resumed and she asked who it was. Defendant identified himself and stated that her husband was down in the car passed out and that he wanted her to drive with him to the Wagon Wheel to pick up their car because her husband was too drunk to drive it back. As she opened the door, the defendant grabbed her around the neck and dragged her down the stairs. He forced her to get into the car and pushed her head down between her legs by applying pressure to her neck. He drove a short distance and stopped the car near a narrow blacktop road. He told her to get in the back seat and when she refused, he started "roughing me up and hitting me." He continued to choke her and pulled her britches down to her knees. He told her that her husband was dead and that if she didn't cooperate he would leave her there for dead. He then proceeded to have sexual intercourse with her. After completing the act of intercourse, he drove approximately one-quarter of a mile, wherein she managed to jump out of the car and run to a house. The people in the house called the police and upon their arrival, she was taken to the hospital where a smear was taken. Regina denied, on cross-examination, going to the defendant's mother's house with her sister and her sister's husband and calling for the defendant to leave his wife and come with her.

Dennis Ray Owl (Regina's husband) testified that on the 10th day of August 1971, he and the defendant were both students at Oklahoma State Tech. After their

classes were over in the morning, he and the defendant drank several beers until Regina got off work. He testified that they took Regina home and that he and the defendant went to Stilwell to attempt to find an address of an uncle. After attempting unsuccessfully to find the uncle, the defendant said that he wanted to stay around Stilwell for a while and Dennis agreed to pick him up at a beer joint at 10:00 p. m. He went by the beer joint at the designated hour and could not find the defendant. He continued to look for him until 11:00 p. m., at which time he went to his mother-in-law's house where he spent the night. He testified that during the course of the day and evening, he and the defendant consumed about two and one-half six packs of beer.

Dr. Jack Myers testified that he examined Regina Kay Owl at approximately 1:40 a. m. on August 11, 1971. He testified that he took a vagina smear which was "read by the Pathologist the next morning and it was positive for sperm." (Tr. 102)

Donald Styles testified that in the early morning hours of August 11, 1971, he heard a knock at his door and upon answering it found Regina Owl, who said that she had been "attacked." He testified that she was hysterical and kept putting her hands to her throat like she was having a hard time talking. Her clothing was disarranged and she was having a problem keeping her pants up. After having a conversation with her, he called the police.

The testimony of Janet Styles did not differ substantially from that of her husband.

Officer Rickman testified that he received a call at approximately 1:00 a. m. to proceed to the Styles' residence. Upon arriving, he observed Regina Owl, who had bruise marks on her neck. She appeared to be scared and had difficulty holding her clothes up.

Ralph Rogers testified that he was an auxiliary police officer and accompanied Officer Rickman on the morning in question. His testimony as to the prosecu-

trix' physical condition did not differ substantially from that of Officer Rickman.

For the defense, Betsy Gonzalis, the defendant's mother, testified that one night her other son, Emmett, his wife, Hazel, and the prosecutrix came by her house where the defendant was living with his wife. Emmett and the prosecutrix both yelled for the defendant to come outside.

Hazel Gonzalis, the prosecutrix' sister, testified that she came to her house at about 2 or 3:00 on the morning of the 11th. She testified that she said that the defendant tore the zipper of her britches and tried to rape her but was unable to accomplish the act of intercourse because he was too drunk.

The defendant testified that he and Dennis Owl went to Stilwell together. They both had been drinking beer since before they left Okmulgee. He testified that Dennis tended to drive pretty fast when he was drinking so he told him that he would meet him in town later. He subsequently looked for Dennis and when he couldn't find him, his sister took him back to Okmulgee. He got his car and drove to Dennis' house to see if he had gotten back yet. He knocked on the door and Regina answered it asking him where Dennis was. She asked him if he would take her to look for her husband. He denied grabbing her and pulling her to the car. They eventually ended up parking on the outskirts of Muskogee. She appeared to be friendly and did not ask him to take her home. He denied using any force on her and stated that she got in the back seat voluntarily. He testified that he had trouble attempting to pull down the zipper on her pants and because of his intoxication, he didn't really remember all of what happened although he "didn't have intercourse." He testified that there was no struggle and that she consented to his advances.

In rebuttal, Hazel Gonzalis was recalled and testified that prior to Regina's marriage to Dennis, she, her husband, Emmett, and Regina went to the home of Betsy Gonzalis. Regina and Emmett had been

drinking and that Regina was "asking for Max." She did not recall hearing Regina holler anything into the house.

■■■ The first proposition asserts that the trial court erred in admitting hearsay testimony of Dr. Myers. Dr. Myers testified without objection that he took a vaginal smear from the prosecutrix which was submitted to another doctor who reported the results of the test to be positive. The defendant cross-examined the doctor concerning the report of the other doctor and at the conclusion of his testimony made the following motion:

"MR. ELIAS: Your Honor, on behalf of the Defendant herein, at this time, we move that the entire testimony of Doctor Jack P. Myers be stricken from the record for the reason that the same is completely incompetent, by his own admission, and irrelevant; additionally, most of his testimony is based exclusively on hearsay and consequently we ask that his testimony be stricken from the record and disregarded by the Court." (Tr. 110)

We are of the opinion that the defendant's motion was not timely made. In Campbell v. State, Okl.Cr., 462 P.2d 349, Judge Brett stated:

"The Court has carefully considered the record and briefs filed in this appeal and fails to find sufficient justification for reversing the conviction sustained by defendant. It is also observed from the record, that the testimony defendant complains of in his brief was not timely objected to by defendant, during his trial. *It comes too late to enter an objection, after the witness had completely unfolded his testimony and then attempt to prevent the jury from considering the same, as was done in the instant case."* (Emphasis added.)

We further observe that the case was tried to the judge rather than to a jury and would not have been unduly influenced or prejudiced by this testimony. Defendant further argues under this proposition that the trial court erred in refusing to require the prose-

cutrix to answer as to whether she had had sexual relations with anyone else on the day of the alleged offense. We are of the opinion that this contention is likewise without merit. The record reflects that the prosecutrix did in fact answer the question concerning prior sexual intercourse in spite of the objections entered by the prosecuting attorney, as follows:

"Q. Were you having sexual relations regularly?

"MR. WEBB: I am going to object to that as immaterial—

"MR. ELIAS: It is imperative that she answer. She is—

"MR. WEBB: Incompetent, irrelevant and immaterial."

"THE COURT: I'll tell you right now that the Court Reporter can only take one person at a time. I will overrule the objection and allow her to testify.

"Q. Had you?

"A. We didn't do it regular, no.

"Q. Pardon?

"A. It had been about two (2) days or three (3) after this happened before we did.

"Q. After this happened before you had relations.

"A. Before it happened.

"Q. It had been two (2) or three (3) days before you had relations—

"A. Before this happened.

"Q. Had you had sexual relations with anybody else?

"MR. WEBB: Your Honor, we object.

"A. No, no." (Tr. 49–50)

The next proposition contends that the court erred in sustaining the conviction for first degree rape and that the evidence was inconsistent, contradictory, unreasonable and completely insufficient to support the verdict. From the foregoing statement of facts, we are of the opinion that the testimony of the prosecutrix was not inherently improbable or unworthy of credence. See Sutterfield v. State, Okl.Cr., 489 P.2d

1345. We therefore find this proposition to be without merit.

■ The third proposition asserts that the "trial court erred as a matter of law in fixing the punishment, upon conviction of the plaintiff in error, at five to ten years imprisonment under the Indeterminate Sentence Act, said sentence being irregular and defective on its face." This proposition is well taken. Title 57 O.S. § 353 provides in part:

"In all cases where a sentence of imprisonment in the penitentiary is imposed, the court in assessing the term of confinement may fix a minimum and a maximum term, both of which shall be within the limits now or hereafter provided by law as the penalty for the conviction of the offense. The minimum term may be less than, but shall not be more than, one-third of the maximum sentence imposed by the Court. * * *"

■ The final proposition contends that "the action of trial defense counsel in waiving preliminary hearing and in waiving a jury trial was prejudicial to the rights of the accused, and the plaintiff in error was thereby deprived of a fair trial." Defendant argues that to waive preliminary hearing and jury trial is tantamount to "throwing in the sponge before the bell rings." The record reflects that the trial court thoroughly inquired as to the defendant's knowledge of the effects of waiving a jury trial. The dialogue between the trial court and the defendant prior to trial was as follows:

"THE COURT: All right. Let the record show the Court would call for trial the case of CRF71–101, the State of Oklahoma versus Max Gonzalis. The Court had previously called this matter for trial in District Court room number one, at which time both sides announced ready for trial and whereupon the Defendant, by and through his attorney, waived the trial of this matter before a Jury and stated in open Court that this case could be tried before the Judge of the District Court. Both sides agreed in open Court to the trial of this matter before the Court and waived trial by Jury. Mr. Gonzalis, you have just heard the statement I made. Is that your statement also and your feeling in this matter, to try this case before the Court?

"MR. GONZALIS: Yes, Your Honor.

"THE COURT: And that is what you desire?

"MR. GONZALIS: Yes.

"THE COURT: Have you had an opportunity to discuss this matter with your attorney and do you understand your Constitutional Rights? Your rights as to what you are entitled to have?

"MR. GONZALIS: Yes.

"THE COURT: And you wish to in open Court waive the right of trial by Jury and try this case to the Court, is that correct?

"MR. GONZALIS: Yes, sir.

"THE COURT: And you do so as a free and voluntary. act and there has been no coersion [sic] or promises or threats made upon you to try this matter to the Court? Is that correct?

"MR. GONZALIS: That is correct.

"THE COURT: Very well. And so far as you know in consulting with your attorney you are now ready for trial?

"MR. GONZALIS: Yes, Your Honor." (Tr. 9–11)

We have previously held that the burden is on the defendant to establish inadequate representation by counsel. Parks v. State, Okl.Cr., 457 P.2d 818. We are of the opinion that the waiver of a preliminary hearing and a jury trial does not in itself establish inadequate representation. The record reflects to the contrary that the defendant's two attorneys were both zealous on cross-examination of the State's witnesses and competently presented the defendant's case in chief. We therefore find this proposition to be without merit.

In conclusion we observe that justice would best be served by modifying the de-

fective sentence to a term of five (5) years imprisonment and it is so modified. The judgment and sentence is affirmed. Modified and affirmed.

SIMMS and BRETT, JJ., concur.